Tilghman C. J.
White was indicted for passing on the 7th January 1812, a counterfeit note of the Bank of the United States, for twenty dollars. The note is particularly described in the indictment, and purports to have been dated the 2d November 1809. The objection to the indictment is, that at the time the offence is alleged to have been committed, the Bank of the United States was not in existence, the period for which the stockholders were incorporated having expired. This indictment is founded on the act of 22d April 1794, sec. 5, by which it is made penal for any person to pass a counterfeit note of the Bank of the United States, knowing it to be such. The defendant’s case is within the words of the law, for he is charged with passing a counterfeit note of the Bank of the United States, knowing it to be such ; and it falls within the spirit of the law, and is one of the mischiefs intended to be prevented by it. Although the corporation was not in existence when this counterfeit note was passed,-yet the genuine note represented by it had a legal existence. The notes of that bank are still in *384 circulation, and the trustees in whom the stock was vested after the dissolution of the corporation, are bound to pay them. It is objected, that if a crime is created by law, and the law is repealed, no punishmeut can be inflicted on a person who was guilty of an offence during the continuance of the law. It was so decided in Passmore’s case, 4 Hall. 373, and passages in Hale and Hawkins were cited to the same purpose. But how does that principle bear on the present case? The act of assembly on which this indictment is founded is in full force. And even the act of congress to incorporate the subscribers to the Bank of the United States, is for some purposes in force, although the corporation expired on the 4th of March 1811. By the tenth section of that act, the notes of the bank payable on demand are receivable in all payments to the United States. It was decided by Chief Justice Marshall, that this provision survived the corporation. Perhaps it may be at this moment repealed, as a bill for that purpose was lately before congress. It was in force however when the defendant was convicted. But I do n°f rely on fhaf '^circumstance, for whether the notes were receivable in payments to the United States or not, yet having been lawfully issued, they had a lawful existence until paid and cancelled. Our law punishes the act of passing a counterfeit note of the Bank of the United States, which is as much as to say, a forged note counterfeiting a genuine note of the Bank of the United States. Now the genuineness of the notes issued during the existence of the corporation, is not affected by its dissolution. These notes may still with propriety be called notes of the Bank of the United States, and the counterfeits may with equal propriety be called counterfeit notes of the Bank of the United States. It has been contended that by virtue of the act of 19th March 1810, it became unlawful to offer or accept in payment, notes of the Bank of the United States; but it appears to me that the meaning of this act has beén entirely mistaken. Its object was, to prevent the issuing of notes by companies not lawfully incorporated. It begins with prohibiting the issuing of notes, of the nature of bank notes, by any association of persons not incorporated by law. The third section makes it unlawful to offer or accept in payment, “ any note or notes issued from any unincorporated bank or banks knowing it to be such.” But these prohibitions have no relation to notes issued by banks which were incorporated when the notes were issued. And that is the case of the notes of the Bank of the United States. Upon the whole, I am of opinion, that the second count of this *385 indictment is good, and therefore the judgment should be affirmed. On the third count I give no opinion.
Yeates J.
The plaintiff in error has been convicted on two counts charged in the indictment. If either of those counts is good in law, and the judgment rendered thereon in the Sessions can be supported, it must be affirmed. The second count charges the prisoner with being concerned in passing a counterfeit twenty dollar note of the late Bank of the United States, knowing the same to be counterfeit, pursuing the words of the fifth section of the act of assembly of 22d April 1794, and on his conviction he has been sentenced to pay a fine of twenty dollars and be imprisoned fur seven years.
The taken hereto, is that this law is virtually ■^repealed as far as it respects the notes of the Bank of the United the act of of the 25th February 1791 incorporating that bank being of a temporary nature, and that the present case is the same in point of principle as that of Passmore in 4 Dallas 373; and that where one statute is engrafted upon another, the operation of the latter act ceases with the former.
The act of congress of February 1791 is not a temporary act. The third section creates the incorporation of the Bank of the United States, but limits the exercise of their corporate rights until the 4th March 1811. The tenth section makes their notes receivable in all payments to the United States. This clause is now in full operation, and has been so decided in the federal courts in two cases cited upon the argument. The forged note passed by the prisoner purports to have been issued on the 2d of November 1809, while the President, Directors and Company of the Bank of the United States lawfully exercised their corporate powers. Individuals holding their genuine notes, brought them in to be exchanged as they thought proper. Many of them are still in circulation, and the holders of them are legally entitled to demand from the trustees of the former company their full value in gold or silver, to be paid out of the funds of the late institution. The law of this state protects these notes, equally with the notes of the banks of Pennsylvania and North America, in the same general clause. And no one can doubt the impolicy of suffering frauds to be practised upon the public with impunity. The punishments prescribed by our law did not depend on the act of the Union, nor were its provisions engrafted thereon.
Our act of assembly supplementary to the act “ relating *386 to associations of individuals for the purpose of banking” can have no influence whatever on the present question. Its plain words go to prevent unincorporated companies from issuing bills or notes in the nature of bank notes; and declares it to be unlawful for any person to offer or accept in payment any such notes knowing them to be such. But no expressions therein will justify the construction, that it would be an offence to pay or receive in payment genuine notes of the late Bank of the United States to such persons as would be willing to accept them. The object of the legislature was of a very different nature.
*Upon the whole, I am of opinion that the fifth section of our law of 22d April 1794 is in full force, and that the judgment rendered on this indictment by the justices of the Court of General Quarter Sessions of the Peace of Chester county be affirmed.
BRACKENRiDfiE J. concurred.
Judgment affirmed.
[Cited in 3 S. & R. 181; 15 S. 409.]