## CROSS *v.* NORTH CAROLINA.

ERROR TO THE SUPREME COURT OF THE STATE OF NORTH CAROLINA.

No. 1084. Argued October 22, 1889. — Decided November 11, 1889.

A State is not deprived of jurisdiction over a person who criminally forges a bill of exchange or promissory note with intent to defraud, in violation of its statutes, or of its power to punish the offender committing such offence, by the fact that he follows this crime up by committing against the United States the further crime of making false entries concerning such bill or note on the books of a national bank, with intent to deceive the agent of the United States designated to examine the affairs of the bank, and in violation of the statute of the United States in that behalf.

The false making or forging of a promissory note in a State, purporting to be executed by an individual, and made payable at a national bank, is not a fraud upon the United States, or an offence described in Rev. Stat. § 5418.

The same act or series of acts may constitute an offence equally against the United States and against a State, and subject the guilty party to punishment under the laws of each government.

If, in a trial in a state court of a person accused of crime, the jury is brought into court; and, on being polled it is disclosed that they were agreed upon a verdict of guilty under two counts in the indictment, but

could not agree as to the other counts; and, in the presence of the jury, the prosecuting attorney proposes to enter a *nolle prosequi* as to those counts; and, the jury having retired, the court permits this to be done; and the jury, being then instructed to pass only upon the remaining counts, return a verdict of guilty as charged in the indictment; all this, however irregular, does not amount to a deprivation of the liberty of the defendant without due process of law.

THE court, in delivering its opinion, stated the case as follows :

The Supreme Court of North Carolina having affirmed a judgment of the Superior Court of Wake County, in that State, whereby, in conformity with the verdict of a jury, the plaintiffs in error were sentenced to hard labor, the present writ of error was sued out upon the ground that the judgment of affirmance sustains an authority, exercised under the State, which was drawn in question as being repugnant to the laws of the United States. The specific contention of the defendants is, that the offence of which they were convicted was cognizable only in the courts of the United States. If this position be well taken, the judgment must be reversed; otherwise, affirmed.

By the Code of North Carolina it is made an offence against that State "if any person, of his own head and imagination, or by false conspiracy or fraud with others, shall wittingly and falsely forge and make, or shall cause or wittingly assent to be forged or made, or shall show forth in evidence knowing the same to be forged, . . . any bond, writing obligatory, bill of exchange, promissory note, indorsement or assignment thereof; . . . with intent . . . to defraud any person or corporation." North Carolina Code, 1883, § 1029. It is provided by the same code that "in any case, where an intent to defraud is required to constitute the offence of forgery or any other offence whatever, it shall be sufficient to allege in the indictment an intent to defraud, without naming therein the particular person or body corporate intended to be defrauded; and, on the trial of such indictment, it shall be sufficient, and shall not be deemed a variance, if there appear to be an intent to defraud the United States, or any State, county,

city, town, or parish, or body corporate, or any public officer, in his official capacity, or any copartnership or member thereof, or any particular person." Ib. § 1191.

The first count of the indictment against the defendants charged that they "unlawfully and feloniously, of their own head and imagination, did wittingly and falsely make, forge and counterfeit," and "did wittingly assent to the falsely making, forging and counterfeiting, a certain promissory note for the payment of money ; which said forged promissory note is of the tenor following, that is to say :

"'$6250.00.                    March 8th, 1888.

"'Four months after date, we, D. H. Graves, principal, and W. H. Sanders, the other subscribers, sureties, promise to pay the State National Bank of Raleigh, North Carolina, or order, sixty-two hundred and fifty dollars, negotiable and payable at the State National Bank of Raleigh, N. C., with interest at the rate of eight per cent per annum after maturity until paid, for value received, being for money borrowed, the said sureties hereby agreeing to continue and remain bound for payment of this note and interest, notwithstanding any extension of time granted from time to time to the principal debtor, waiving all notice of such extension of time from either payer or payee ; and I do hereby appoint Sam. C. White, cashier, my true and lawful attorney to sell any or all collateral he may have in his hands to pay this claim if I should fail to do so when said claim falls due, after giving me ten days' notice of his intention to sell the same, and pay any surplus that may remain to me.

"'D. H. GRAVES.

"'W. H. SANDERS.'

"And upon the back of which said false, forged and counterfeited promissory note is stamped and written — 'D. D. D. H. Graves. $6250. July 8,' — with intent to defraud, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State."

The second count relates to a note of the same description, and charges the defendants with having unlawfully, feloniously.

and wittingly, uttered and published it as true, "with intent to defraud," knowing, at the time, the same to be false, forged and counterfeited.

The third count charged that the defendants, of their own head and imagination, falsely, unlawfully and feloniously made, forged and counterfeited, and caused and procured to be made, forged and counterfeited, and wittingly aided and assented to the false making, forging and counterfeiting a note of like description, with "intent to fraud . . . the State National Bank, a corporation . . . duly created and existing under the laws of the United States, contrary," etc.

The fourth count charged that the defendants, devising and intending to defraud the State National Bank of Raleigh, North Carolina, a corporation existing under the laws of the United States, unlawfully and falsely combined and conspired together to make, forge, counterfeit, and by such conspiracy and fraud feloniously, falsely and wittingly did forge and make, and caused and assented to be forged and made, the above described note, "with intent to defraud, contrary to the form of the statute," etc.

The defendants filed a joint plea in abatement, contesting the jurisdiction of the state court upon the following grounds :

"That at the time of the alleged conspiracy and conspiracies, forgery and forgeries, uttering and utterings, in said indictment specified, there was a national banking association, duly organized and acting under the laws of the United States, in Raleigh, Wake County, North Carolina, known as the State National Bank of Raleigh, North Carolina, having its place of business and doing its said business in the said city of Raleigh, in the county of Wake and State of North Carolina, and within the jurisdiction of the Circuit Court of the United States for the Eastern District of North Carolina ;

"That the said Charles E. Cross was then and there an officer of said bank, to wit, its president, and the said Samuel C. White was then and there an officer of said bank, to wit, its cashier ;

"That said alleged conspiracy and conspiracies, forgery and forgeries, uttering and utterings were made, entered into, com-

mitted and done by the said Charles E. Cross, and afterwards assented to by the said Samuel C. White, for the purpose of supporting, sustaining and making a certain false entry and entries, in the books of said bank, and that the said false entry and entries were by the said Samuel C. White, cashier as aforesaid, acting as cashier, actually made in and upon the books of the said bank, the said Charles E. Cross being then and there aiding and abetting, for the purpose of deceiving, and with intent to deceive, the agent of the United States; to wit: the bank examiner of the United States, duly appointed to examine into the affairs of the said association, to wit, the State National Bank of Raleigh, North Carolina;

"That the said note, in said indictment specified, was never uttered or published in any way, nor to any other person or corporation, nor was there any intent or attempt so to do;

"That the said note, in the said indictment specified, was entered upon and in the books of the State National Bank aforesaid as the property of the said National Bank of Raleigh, North Carolina, and placed among the assets by the said Charles E. Cross and Samuel C. White as aforesaid, for the purpose and with the intent aforesaid.

" The above facts the said Charles E. Cross and Samuel C. White are ready to verify.

" Wherefore they pray judgment if the said court now here will or ought to take cognizance of this indictment here preferred against them, and that by the court here they may be dismissed and discharged," etc.

This plea having been disallowed, the defendants severally pleaded not guilty. After the cause was finally submitted to the jury, the attorney for the State, with the permission of the court, entered a *nolle prosequi* as to the third and fourth counts. The jury thereupon returned a verdict of guilty as charged in the indictment, and judgment thereon was accordingly entered.

*Mr. W. R. Henry,* for plaintiffs in error, cited: *Moore* v. *Illinois,* 14 How. 13; *Houston* v. *Moore,* 5 Wheat. 1; *Commonwealth* v. *Tenney,* 97 Mass. 50; *Commonwealth* v. *Felton,*

101 Mass. 204; *Commonwealth* v. *Fuller*, 8 Met. (Mass.) 313; *S. C.* 41 Am. Dec. 509; *State* v. *Smith*, 43 Vermont, 324; *Drake* v. *State*, 60 Alabama, 42; *State* v. *Cooper*, 13 N. J. Law (1 J. S. Green), 361; *S. C.* 25 Am. Dec. 490; *State* v. *Chaffin*, 2 Swan (Tenn.) 493; *State* v. *Shelley*, 11 Lea, 594; *State* v. *Ingles*, 2 Hayward (N. C.) 148; *State* v. *Lewis*, 2 Hawks, 98; *S. C.* 11 Am. Dec. 741; *United States* v. *Harmison*, 3 Sawyer, 556; *State* v. *Pike*, 15 New Hampshire, 83; *United States* v. *Comerford*, 25 Fed. Rep. 902; *Sturges* v. *Crowninshield*, 4 Wheat. 122; *Prigg* v. *Pennsylvania*, 16 Pet. 539; *United States* v. *Wilcox*, 4 Blatchford, 385; *The William King*, 2 Wheat. 148; *Lee* v. *Lee*, 8 Pet. 44; *Delafield* v. *Illinois*, 2 Hill, 159; *People* v. *Lynch*, 11 Johns. 549; *United States* v. *Lathrop*, 17 Johns. 4; *In re Campen*, 2 Ben. 419.

*Mr. Theodore F. Davidson*, Attorney General of the State of North Carolina, for defendant in error, cited: *Fox* v. *Ohio*, 5 How. 410; *United States* v. *Lawrence*, 13 Blatchford, 211; *Territory* v. *Coleman*, 1 Oregon, 191; *Coleman* v. *Tennessee*, 97 U. S. 509; *Ex parte Houghton*, 7 Fed. Rep. 657; *Moore* v. *Illinois*, 14 How. 13; *Commonwealth* v. *Bakeman*, 105 Mass. 53; *United States* v. *Barney*, 5 Blatchford, 294; *Virginia* v. *Rives*, 100 U. S. 313; *Arrowsmith* v. *Harmoning*, 118 U. S. 194; *State* v. *Bowers*, 94 North Carolina, 910; *State* v. *McNeill*, 93 North Carolina, 552; *State* v. *Thompson*, 95 North Carolina, 596; *State* v. *Taylor*, 84 North Carolina, 773; *State* v. *Carland*, 90 North Carolina, 668.

Mr. JUSTICE HARLAN, delivering the opinion of the court, after stating the case, continued:

The plea in abatement was evidently drawn with reference to § 5209 of the Revised Statutes, Title, National Banks. That section provides, among other things, that "every president, director, cashier, teller, clerk or agent of any association . . . who makes any false entry in any book, report, or statement of the association, with intent, in either case, to injure or defraud the association or any other company, body politic or corporate, or any individual person, or to deceive any officer

of the association, or any agent appointed to examine the affairs of any such association ; and every person who, with like intent, aids or abets any officer, clerk or agent in any violation of this section, shall be deemed guilty of a misdemeanor, and shall be imprisoned not less than five years nor more than ten."

It is contended that the courts of the United States have exclusive jurisdiction to try the defendants for having made the false entries on the books of the bank, with the intent stated in the plea ; that the forgery in question is an integral, essential element in such entries, which were false only because based upon the forged notes ; that the defendants cannot be tried for the false entries, after being tried for the forgery ; consequently, a recognition of the right of the state court to try them for the latter offence will defeat the jurisdiction of the federal court to try them for the former offence. In other words, that where exclusive jurisdiction is given to the court of the United States to try an offence, the state court cannot exercise jurisdiction in respect to any particular act constituting an essential ingredient of that offence, although the commission of such act is made a crime against the State.

The fallacy of this argument is in assuming that the offence described in § 5209 of the Revised Statutes, namely, the making, by an officer or agent of a national banking association, of a false entry in its books, reports or statements, with intent to injure or defraud the association, or others, or with the intent to deceive its officers or any agent appointed to examine its affairs, necessarily involves the crime of forgery, of which the defendants were found guilty. If the notes in question had not been forged, but, with or without the consent of the obligors, had been temporarily placed by the defendants among the assets of the bank, and entered upon its books, when they were not its property, with intent to deceive the agent appointed to examine its affairs, they could have been punished under § 5209. On the other hand, the crime defined in § 1029 of the Code of North Carolina would have been complete, if the defendants simply made and forged, or caused to be made and forged, or willingly assented to the making or

forgery of the notes described in the indictment, with intent to defraud, and did not follow it up by committing the crime against the United States of making false entries in respect thereto upon the books of the bank, with the intent to deceive the agent designated to examine its affairs. The crime against the State could not be excused or obliterated by committing another and distinct crime against the United States.

It is, also, contended that the crime of forgery, as defined in the Code of North Carolina, and described in the indictment, is made, by § 5418 of the Revised Statutes, an offence against the United States; and that as the courts of the United States are invested with exclusive jurisdiction " of all crimes and offences cognizable under the authority of the United States," Rev. Stat. § 711, the judgment must be reversed. This position cannot be sustained. Section 5418 of the Revised Statutes makes it an offence against the United States for any person to falsely make, alter, forge or counterfeit "any bid, proposal, guarantee, official bond, public record, affidavit or other writing, for the purpose of defrauding the United States," or to utter or publish as true " any such false, forged, altered or counterfeited bid, proposal, guarantee, official bond, public record, affidavit or other writing, knowing the same to be false, forged, altered or counterfeited for such purpose," or to transmit to or present at "the office of any officer of the United States any such false, forged, altered or counterfeited bid, proposal, guaranty, official bond, public record, affidavit or other writing, knowing the same to be false, forged, altered or counterfeited, for such purpose." See also § 5479.

We do not think that the crime of which the defendants were found guilty is within either the words or scope of § 5418. The object of that section was to protect the general government against the consequences that might result from the forgery, alteration or counterfeiting of documents, records or writings, that had some connection with its business, as conducted by its own officers. The false making or forging of promissory notes or other securities, purporting to be executed by individuals, and made payable to or at a national banking association, cannot be said to have been done " for the purpose

of defrauding the United States," and to constitute the offence described in § 5418. Such an act may be in fraud of the bank or of its stockholders, but is not, in itself, or within the meaning of that section, a fraud upon the United States.

The argument in behalf of the plaintiffs in error fails to give effect to the established doctrine that the same act or series of acts may constitute an offence equally against the United States and the State, subjecting the guilty party to punishment under the laws of each government. This doctrine is illustrated in *United States* v. *Marigold*, 9 How. 560, 569; *Fox* v. *Ohio*, 5 How. 410, 433; *Moore* v. *Illinois*, 14 How. 13, 19; and *Ex parte Siebold*, 100 U. S. 371, 390; in the first of which cases it was said that "the same act might, as to its character and tendencies, and the consequences it involved, constitute an offence against both the state and federal governments, and might draw to its commission the penalties denounced by either, as appropriate to its character in reference to each." If it were competent for Congress to give exclusive jurisdiction to the courts of the United States of the crime of falsely making or forging promissory notes, purporting to be executed by individuals, and made payable to or at a national bank, or of the crime of uttering or publishing as true any such falsely made or forged notes, it has not done so. Its legislation does not assume to restrict the authority, which the States have always exercised, of punishing in their own tribunals the crime of forging promissory notes and other commercial securities executed by private persons, and used for purposes of private business. The forgery of such instruments is none the less injurious to the welfare of the people of a State because they happen to be made payable to or at banking associations which come into existence under the authority of the United States. If the punishment by the State of the crime of forgery, of which the defendants were found guilty, leaves them exposed to punishment by the United States for having made false entries upon the books of the bank of which they were officers, with the intent to deceive the agent appointed by the general government to examine its affairs, it results from the fact that they are amenable to the laws of

the United States, as well as of the State of North Carolina, and may be subjected to punishment for violating the laws of each government. The forgery may have been committed in order that the instrument forged might thereafter become the basis of false entries upon the books of the bank. But that circumstance cannot defeat the authority of the State, charged with the duty of protecting its own citizens, from punishing the forgery as, in itself, a distinct, separate offence committed within its limits and against its laws.

The remaining assignment of error relates to what occurred when the jury were brought into court, and the fact disclosed, by polling them, that they were agreed upon a verdict of guilty under the first and second counts of the indictment, but could not agree as to the third and fourth counts. Thereupon, the attorney for the State, in the presence of the jury, proposed to enter a *nolle prosequi* as to the third and fourth counts. The jury having been sent out, the court permitted a *nolle prosequi* upon those counts to be entered. Of this fact the jury were informed, and being instructed to pass only on the remaining counts, they retired, and returned into court a verdict of guilty, in manner and form as charged in the indictment. The Supreme Court of the State expressed its disapproval of the mode adopted for ascertaining the individual opinion of each juror before an agreement had been reached by the entire body, but held that the entry of a *nolle prosequi* as to the third and fourth counts was, in legal effect, a consent to the acquittal of the defendants in respect to the offences therein named, and, therefore, did not work any injury to them. It also held that in accordance with the principles of previous decisions in that court, the general verdict would be restricted to such of the counts as the jury were directed to pass on. We are of opinion that there was nothing in all this amounting to a deprivation of the liberty of the defendants without due process of law. At most it was a mere error in procedure or practice that did not affect the substantial rights of the accused. What was permitted to be done was to the end simply that the jury might return a verdict upon those counts in the indictment upon which they were agreed. *Judgment affirmed.*