CITY OF FLORENCE v. BROWN.

(TWO CASES.)

1. CITY OF FLORENCE — MUNICIPAL CHARTER — LIQUORS — POLICE POWER.—The city council of Florence, under the city charter (21 Stat., 908,) conferring on it powers to pass ordinances respecting "the roads, streets, market, and police force of said city," cannot pass and enforce an ordinance prohibiting the sale of liquors *anywhere* in the city. *Divided Court.*

2. MUNICIPAL CORPORATION—LIQUORS—DISPENSARY LAW.—The dispensary law does not preclude a municipal corporation from passing and enforcing an ordinance prohibiting the sale of liquors, except by duly authorized officers, where the charter gives the municipality such power.

3. REHEARING, for purpose of submitting the case to Court *en banc,* refused, because no constitutional question is involved, and no two Justices of this Court request it.

Before BENET, J., Florence, November, 1896.    Affirmed.

E. A. Brown was tried and convicted by the mayor's court of the city of Florence for selling liquors in said city in violation of a city ordinance.    He appealed to the Circuit Court, which reversed the mayor.    From this judgment the city of Florence appeals.

*Mr. Geo. G. Thompson,* for appellant, cites: 30 S. C., 95; 21 S. C., 292; 11 S. C., 291; 4 Rich., 104; 29 S. C., 355.

*Messrs. P. A. Wilcox* and *W. F. Clayton,* contra, cite: 19 S. E. R., 458, 745; 15 S. C., 550; 22 Stat., 89.

The opinions were first filed on 23d March, 1897, and remittitur stayed until
May 11, 1897.  The opinion of the Court was delivered by

MR. CHIEF JUSTICE McIVER.    On the 23d day of June, 1896, the defendant was tried, convicted, and sentenced by the mayor's court of the city of Florence for selling spiritous liquors within the limits of said city, in violation of one of the ordinances of said city prohibiting the sale of such liquors within the limits of the said city.    The ordinance under which the defendant was tried and convicted provides in section 1: "That from and after the passage of this ordinance, it shall be unlawful for any person or persons within the limits of the city of Florence to sell or offer for sale, exchange or barter, either directly or indirectly, and [any?] spirituous, malt, alcoholic, vinous, or intoxicating liquors," with a proviso that the ordinance shall not apply to any person authorized to sell or dispense such liquors under the provisions of the act known as the dispensary law. The second section provides that the punishment for any violation or this ordinance shall be a fine of not less than one nor more than one hundred dollars, or imprisonment for not less than one nor more than thirty days.

From this conviction and sentence the defendant appealed to the Court of General Sessions, and the appeal was heard by his Honor, Judge Benet, who rendered judgment reversing the judgment of the municipal court upon two grounds: 1st. Because the charter of the city conferred no authority upon the city council to pass the ordinance claimed to have been violated.    2d. Because "the dispensary law is of general application, and contains all that is necessary to the regulation of the liquor question in this State, and that the right to prohibit the sale of liquor is vested by the Constitution in the General Assembly."    From this judgment the city appeals upon the several grounds set out in the record, which make but two questions.    1st. Whether the charter of the city confers any authority to pass the ordinance in question.    2d. If so, is the dispensary law exhaustive of the subject, and does it exclude a municipal corporation from passing any ordinance forbidding the sale of spirituous liquors within the corporate limits of such municipality?

So much of the charter of the city as relates to this matter, taken from the act of 1894, 21 Stat., at page 908, is set forth in the "Case," and reads as follows: "And the said city council shall have power to make and establish all such rules, by-laws, and ordinances respecting the roads, streets, market, and police force of said city as shall appear to them necessary and requisite for the security, welfare, and convenience of said city, or for preserving health, order, peace, and good government within the same. * * * And the city council shall have power to fix fines and penalties for the violation of city ordinances, not to exceed one hundred dollars fine or thirty days imprisonment." To solve the first question, it is necessary to inquire whether the provisions of the charter above set forth confer upon the city council the power to pass the ordinance in question, for it is well settled that a municipal corporation has no powers except such as are conferred by the charter, either in express terms or by necessary implication. As is said in 1 Dillon on Mun. Corp., sec. 55 of the 2d edit.: "It is a general and undisputed proposition of law that a municipal corporation possesses and can exercise the following powers and no others: First, those granted in *express words;* second, those *necessarily or fairly implied* in or *incident* to the powers expressly granted; third, those *essential* to the declared objects and purposes of the corporation, not simply convenient, but indispensable." And in 15 Am. & Eng. Enc. of Law, at page 1041, it is said that this analysis of municipal powers, originally formulated by Judge Dillon, is certainly "concise and accurate, and has been subsequently adopted by numerous authorities as the best summary of decisions to be found in the books," citing a large number of cases, amongst others our own case of *Blake* v. *Walker*, 23 S. C., 517. An analysis of the provisions of the charter above quoted will show that the only powers there conferred upon the city council are to pass ordinances respecting certain *specified* subjects for certain *specified* purposes. The subjects specified are "the roads,

streets, market, and police force of said city," and the pur-
poses specified are "for the security, welfare, and convenience
of said city, or for preserving health, order, peace, and good
government within the same." So that for the purpose of
solving the inquiry, whether any given ordinance is within
the legislative powers conferred upon the city council, two
inquiries are presented: 1st. Whether such ordinance is an
ordinance "respecting the roads, streets, market, and police
force of said city." 2d. Whether such ordinance is, in the
judgment of the city council, "necessary and requisite for
the security, welfare, and convenience of said city, or for
preserving health, order, peace, and good government within
the same." Both of these inquiries must be answered in the
affirmative before the power to pass such ordinance can be
affirmed. Now, while the ordinance here in question may
be, and no doubt is, well calculated to promote some of
the purposes above specified, yet we do not see how it
can be said that it relates to any one of the subjects over
which the city council has been invested with power
to legislate for the purposes specified. It is not an ordi-
nance respecting either the roads, streets, market or police
force of the city, for it has no reference to either of those
subjects. If the ordinance had forbidden the sale of spirit-
uous liquors in any of the streets or in the market of the
city, then we could see how it would come within the legis-
lative power of the city council. But such is not the
character of the ordinance, for it is general in its character
and applies, and was intended to apply, to a sale *anywhere*
within the corporate limits of the city, except in a legally
established dispensary. It is contended, however, 1st. That
the clause, "or for preserving health, order, peace, and good
government within the same," is not limited by the pre-
vious clause—"respecting the roads, streets, market, and
police force"—but that the clause first quoted should be
construed as conferring the power to legislate over *any* sub-
ject, for the purposes there specified. Such a construction
involves a violation of grammatical rules, and cannot, there-

fore, be adopted. If the General Assembly intended to confer upon the city council the power to legislate "respecting" or relating to any subject for the purpose of preserving health, peace, and good order of the city, it would have been very easy and most natural to have said so, in plain and unmistakable terms, as has been done in many, if not the most, of the municipal charters granted. But, in this instance, they have not said so; and it is not for the Court to extend, by strained construction, the language which the law-making power has seen fit to use, so as to cover cases beyond the legitimate construction of such language. Again, it is contended that the words "police force" should be construed to mean "police." In other words, the proposition is to strike the word "force" out of the statute. This would be in plain violation of the fundamental rules of statutory construction. Rule 9 of the American Rules of Statutory Construction, as laid down in Potter's Dwarris on Stat., at page 144, reads as follows: "Statutes should be interpreted according to the most natural and obvious import of their language, without resorting to subtle or forced construction for the purpose either of limiting or extending their operation. Courts cannot correct supposed errors, omissions or excesses of the legislature." And, on the next page, that distinguished writer lays down Rule 19 in these words: "Whether Courts are interpreting an agreement between parties, a statute, or a constitution, the thing to seek is, *the thought which it expresses.* To ascertain this, the first resort in all cases is to the natural signification of the words employed, in the order and grammatical arrangement in which they stand. If thus regarded, the words embody a definite meaning, which involves no absurdity, and no contradiction between different parts of the same writing; then that meaning apparent upon the face of the instrument is the one which *alone* we are at liberty to say was intended to be conveyed. In such case there is no room for construction. That which the words declare is the meaning of the instrument, and neither the courts nor

the legislature have a right to add to or take away from
that meaning." Other rules might be cited, but these are
deemed quite sufficient. It will scarcely be denied that the
word "police" has a totally distinct and different meaning
from the words "police force." Whenever these words—
"police force"—are found in a statute or other writing,
every one would at once understand that reference was in-
tended to be had to the body of men appointed to preserve
the peace and good order of a city or town, and no one
would ever suppose that the intention was to refer to that
extensive and undefined, if not indefinable, power usually
spoken of as "the police power" or "police regulations."
It is true that, the word "police" is sometimes loosely, but
inaccurately, used to designate the policemen of a town or
city—the body of men appointed to preserve the peace and
good order of a town or city; but never, so far as we are in-
formed, have the words "police force" been used to desig-
nate the "police power" above referred to. It will also be
remembered that it is not only proper and reasonable, but,
perhaps, absolutely necessary, that the city council should
be invested with the power to pass ordinances "respecting"
the "police force" as herein defined, and hence the con-
struction which we have adopted involves no absurdity or
unreasonableness. Besides this, the rule is well settled,
that where there is a reasonable doubt as to whether the
power in question had been conferred, such doubt should
be resolved against the municipal corporation, and the power
denied. As is said by that eminent author, Judge Dillon,
in the section already quoted from: "Any fair, reasonable
doubt concerning the existence of power is resolved by the
courts against the corporation, and the power is denied."
And the same doctrine is laid down in 15 Am. & Eng. Enc.
of Law, 1041. Now in this case it cannot be denied that
there is such doubt, and hence this power should be denied.

While this view, if adopted, would be conclusive of the
case, it may not be amiss to consider the second ground
upon which the Circuit Judge rested his judgment.

22—49

2 Upon this point we cannot concur in the view taken by Judge Benet. The fact that the dispensary law, an act in general operation throughout the State, forbids the sale of spirituous liquors anywhere within the limits of the State, except by certain officers or agents, and prescribe penalties for a violation of such law, affords no reason why a municipal corporation, if properly invested with the power so to do, may not also forbid such sale within the corporate limits of such municipality, under penalties to be imposed by the proper corporate authorities. As was said by the great Judge O'Neall, in *Heise* v. *Town Council*, 6 Rich., 404: "That the by-laws of a corporation must be subordinate to, and not in conflict with, the statute law, cannot be denied. I confess I don't perceive how an ordinance imposing a fine for doing an act within the corporate limits, which the legislature has declared to be unlawful, can be said to be in conflict with such law. Both can very well stand together, and both may be enforced—one as against a corporator, and the other against him as a citizen." It is true, this language was used in a Circuit decision, and the case turning upon another point in the Court of Appeals, that Court did not find it necessary to pass directly upon the proposition laid down in the Circuit decision, though the reasoning of the Court upon another point impliedly, at least, sustained the view presented by Judge O'Neall. But in the subsequent case of *The State ex rel. Burton* v. *Williams*, 11 S. C., 288, the language of Judge O'Neall was quoted with approval in the opinion of this Court; and in the more recent decision in the case of *City Council* v. *O'Donnell*, 29 S. C., 355, the same doctrine was explicitly laid down and approved by this Court. The same doctrine prevails elsewhere, as may be seen by the cases cited in the two decisions above referred to, and is approved by that eminent author, Judge Cooley, in his book on Const. Lim., 199, where he cites the case of *Mayor of Mobile* v. *Allaire*, 14 Ala., 400, in which the view we have adopted is strongly presented. The same principle has been approved by the

Supreme Court of the United States, in *Cross* v. *North Carolina*, 132 U. S., 131, where it was held that a person may be indicted for the same act, both under the laws of the United States and under the statute of a State, where such act is forbidden by the laws of both governments. In that case, Mr. Justice Harlan, in delivering the opinion of the Court, uses this language: "The argument in behalf of the plaintiffs in error fails to give effect to the established doctrine that the same act or series of acts may constitute an offense equally against the United States and the State, subjecting the guilty party to punishment under the laws of each government;" and cites several cases as establishing that doctrine.

This being settled, it only remains to inquire, whether there is anything in the provisions of the dispensary law which forbids a municipal corporation from passing an ordinance making it a penal offense for a person to sell spirituous liquors within the corporate limits of such municipality. If there is any such provision, it has not been pointed out, and we have been unable to find it. The suggestion that the provision of the dispensary law requiring the officers of every municipal corporation to aid in the enforcement of the dispensary law, under the penalty of losing their share of the profits arising from the sale of spirituous liquors, and in case of their failure or refusal to lend such aid, they incur a liability of being placed under the provisions of the metropolitan police act, tend to show that the intention of the legislature was to make that scheme of legislation exhaustive, and hence that municipal corporations are at least impliedly forbidden to legislate upon the subject of the sale of spirituous liquors in any way, does not seem to us well founded. The object of the dispensary law is to abslutely prohibit the sale, by a private person, of spirituous liquors anywhere within the limits of the State, and surely the fact that a municipal corporation has, for the purpose of providing for its own police regulations, passed an ordinance forbidding a sale of spirituous liquors

within its corporate limits, in no way tends to conflict with but rather to aid the object of the dispensary law. As was well said by Collier, C. J., in the Alabama case above referred to: "The object of the power conferred by the charter and the purpose of the ordinance itself was not to punish for an offense against the criminal justice of the country, but to provide a mere *police regulation* for the enforcement of good order and quiet within the limits of the corporation." Any other view than that which we have adopted would necessarily lead to the result that a municipal corporation would not be authorized to pass an ordinance forbidding, under a penalty, a person from doing an act within the corporate limits where such act is punishable by the general laws of the State. Again, it is contended that the right to prohibit the doing of any act is coextensive with the right to license the doing of such act, and as the Constitution, in article VIII., section 11, has vested in the General Assembly the exclusive right to grant licenses for the sale of spirituous liquors, and has forbidden that body to delegate that power to any municipal corporation, and hence no municipal corporation can exercise the power to grant licenses for the sale of spirituous liquors; and, therefore, it is argued that no municipal corporation can be invested with the power to prohibit the sale of spirituous liquors within its corporate limits. We cannot accept that view. The power to prohibit is not always coextensive with the power to grant; or, to express the idea upon which this argument rests more accurately, the power to prohibit is not limited by the power to grant. It cannot be denied that a municipal corporation may be, and has often been, invested by its charter with the power to prohibit breaches of the peace, keeping of gaming houses or bawdy houses, and to provide such other police regulations as may be necessary for the maintenance of peace and good order within the corporate limits, and yet it has never been supposed, so far as we are informed, that such power involves the right to license breaches of the peace or the keeping of

gaming or bawdy houses. It will be observed that the charter of the city of Florence, which it is claimed conferred the power to pass the ordinance here in question, was approved the 21st day of December, 1894, long after at least two of the general dispensary acts had been passed, and as all of the dispensary acts are practically identical with the two first, so far as the prohibition to sell spirituous liquors is concerned, the necessary conclusion is, that the legislature did not intend that the provision of the dispensary law forbidding the sale of spirituous liquors, except by the official agencies therein designated, should be so exhaustive of the subject as to prevent a municipal corporation from passing an ordinance forbidding the sale of spirituous liquors within the corporate limits by any person other than those authorized so to do by the provisions of the dispensary law. This, as it seems to us, is absolutely conclusive. The legislature, by its own action, has declared that the provisions of the dispensary law forbidding the sale of spirituous liquors were not intended to prevent a municipal corporation from forbidding such sale within its corporate limits; for (assuming that the charter of the city of Florence does confer such a power) that after the legislature had adopted the general scheme of the dispensary law, they have conferred such power upon the municipal authorities of the city of Florence.

It must be concluded, therefore, that while the second ground upon which the judgment of the Circuit Court is based cannot be sustained, yet the first ground being sustained, the judgment below should be affirmed.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE POPE *concurs.*

MR. JUSTICE GARY, *dissenting.* I dissent, as I think the judgment should be reversed on both the questions raised by the exceptions.

MR. JUSTICE JONES, *dissenting.* I agree with Mr. Jus-

tice Gary in thinking the judgment of the Circuit Court should be reversed on both grounds discussed in the opinion of the Chief Justice. The sentence in the charter, containing the grant of power to the city of Florence, is somewhat awkwardly expressed, but I think the legislature intended to grant the city council power to make and establish rules, by-laws, and ordinances for preserving health, order, peace, and good government within the city limits. Any other construction involves an absurdity. Under the construction adopted in the opinion of the learned Chief Justice, the city council of Florence have power by ordinance to prevent the unlawful traffic in intoxicating liquors on the streets and in the market place, where it is rarely, if ever, done, but are absolutely powerless to interfere when such traffic is carried on in its usual and secret lairs. This surely was not intended by the legislature. The mere reading of a semicolon in place of a comma before the words, "or for preserving health, order, peace, and good government within the same," would prevent the possibility of such a construction. A construction based merely on the grammatical arrangement of words or clauses should not be sustained, when such construction leads to results so unreasonable and absurd as to justify a belief that the legislature did not so intend, *unless the language used will admit of no other construction.* When the language used in this charter is considered in view of the objects for which municipal corporations are usually created, it cannot be doubted that the legislature intended to confer upon this municipality the power to preserve health, order, peace, and good government *within its limits*, not merely *with respect to its streets and market.*

A majority of the Court not being in favor of reversing the judgment of the Circuit Court, the same stands confirmed under the Constitution.

Petition for rehearing. PER CURIAM. This petition for a rehearing is based upon two grounds: 1st. Because this Court being equally divided as to the true construction of

one of the clauses in the charter of appellants, the question is left practically undetermined when it arises in some subsequent case, and for that reason a rehearing should be granted, in order that this Court may call to its assistance the Circuit Judges, as provided for by sec. 12 of art. V. of the present Constitution as well as by sec. 19 of an act entitled "An act to provide the organization of the Supreme Court, to define its powers and jurisdiction, and to provide for the appointments of its officers, and to define their duties," approved the 19th of January, 1896.    22 Stat., 3.

It does not seem to us that this constitutes any ground for a rehearing.    Both the Constitution and the statute above referred to provide for but two contingencies in which the Circuit Judges shall be called in: 1st, where a constitutional question is involved; 2d, where at least two of the Justices of this Court desire that the Circuit Judges shall be called in; and neither of these contingencies has happened in this case.    It is not, and could not, be claimed that any constitutional question is involved, and two of the Justices of this Court have not expressed any desire that the Circuit Judges should be called in to assist in the determination of the question which is involved in the case under consideration.    It is merely a question as to the proper construction of one of the clauses in the charter of a municipal corporation, and which it is quite natural that those who constitute such corporation should regard as a matter of so much importance as to justify the exercise of the power vested in this Court to call to their assistance the Circuit Judges for the authoritative determination of the question involved; yet that is not one of the contingencies provided for both by the Constitution and the statute, which requires the exercise of such power.    It is manifest that neither the Constitution nor the statute contemplated that such a power should be exercised simply because the parties to the cause desire that the question should be authoritatively determined; for that would involve the necessity of calling in the Circuit Judges in *every* case where

this Court happens to be equally divided; for if such had been the intention of the law-making power, it would have been very easy and most natural for them to say so. But they have not said so; and, on the contrary, but two con-tingencies have been provided for in which the power is to be exercised. In view of the expense, delay, and interfer-ence with the ordinary duties of the Circuit Judges, which will in many, if not most, cases result from calling the Cir-cuit Judges to the assistance of this Court, we are not dis-posed to exercise the power vested in this Court, except where some grave question of public concern is involved. In this particular case, we are the less reluctant to decline to exercise the power invoked by the appellant, as it is very apparent that any doubt which may be entertained as to the scope of the powers conferred by the charter of the plaintiff corporation can so easily and readily be removed by an amendment of their charter. The second ground upon which the application for rehearing is based is, that the Court overlooked the fact that in the previous charter of the plaintiff corporation language was used which clearly conferred the power claimed in this case. In the first place, a careful re-examination of the record in this case, as well as the arguments on file here, fails to show that any such fact was brought to the attention of this Court; and it could scarcely be said that the Court had overlooked a fact not brought to its attention. But, in the second place, it seems to us that if the fact claimed to have been overlooked had been brought to our attention, the effect would have been to strengthen rather than weaken the argument in favor of the construction adopted by two of the members of this Court. For if the legislature had previously granted a charter to the plaintiff corporation, in terms which obvi-ously conferred the power in question, and subsequently granted the present charter in terms which, at least, were open to question, the natural inference would be that the legislature intended to restrain the power within narrower limits than those fixed by the previous charter. If the

legislature in the former charter had conferred general police powers on the plaintiff corporation, and in the present charter has confined the scope of such general powers to the *police force*, the legitimate inference would be that the intention was to restrict the powers conferred within narrower limits than those previously prescribed.

It is, therefore, ordered, that the petition for a rehearing be dismissed, and that the stay of the remittitur heretofore granted be revoked.