## Commonwealth v. Kitchen.

(Decided January 19, 1911.)

### Appeal from Carter Circuit Court.

Perjury—Jurisdiction of State Court.—Perjury committed in testifying before a United States Commissioner, in a trial before him, is an offense against the United States and within the exclusive jurisdiction of its courts, and can not be punished in the courts of the State.

JAMES BREATHITT, Attorney General, and TOM B. M'GREGOR, Assistant Attorney General, for appellant.

R. T. KENNARD for appellee.

OPINION OF THE COURT BY JUDGE MILLER.—Affirming.

The appellee, Roscoe Kitchen, was indicted for false swearing, after having been legally and duly sworn by H. L. Woods, United States Commissioner, a person authorized to administer an oath, in a trial before said Commissioner in the case of United States v. Stapleton, on a charge of retailing liquor in violation of law. The circuit court sustained a demurrer to the jurisdiction of that court, upon the theory that a State court has no jurisdiction to try a person for the crime of false swearing committed before an officer of the United States.

Section 1174 of the Kentucky Statutes, provides:

"If any person, in any matter which is or may be judicially pending, or which is being investigated by a grand jury, or on any subject in which he can legally be sworn, or on which he is required to be sworn, when

sworn by a person authorized by law to administer an oath, shall willfully and knowingly swear, dispose or give in evidence that which is false, he shall be confined in the penitentiary not less than one nor more than five years.''

The statute is general in its terms, and is broad enough to embrace a case of false swearing in any tribunal, either State or federal; and if it were an open question it might be one of some difficulty. The situation of the State courts with respect to those cases which were to be submitted to federal jurisdiction by an adoption of the Constitution of the United States—whether the federal jurisdiction was to be exclusive, or concurrent with the jurisdiction of the State courts—was carefully considered and discussed before the federal constitution became effective.

In the 82nd number of the Federalist, Hamilton wrote as follows:

''The States will retain all pre-existing authorities which may not be exclusively delegated to the Federal head; and that this exclusive delegation can only exist in one of three cases where an exclusive authority is in express terms granted to the Union; or where a particular authority is granted to the Union, and the exercise of a like authority is prohibited to the States; or where an authority is granted to the Union, with which a similar authority in the States would be utterly incompatible. Though these principles may not apply with the same force to the judiciary as to the legislative power, yet I am inclined to think that they are, in the main, just with respect to the former, as well as the latter. And, under this impression, I shall lay it down as a rule that the State courts will retain the jurisdiction they now have, unless it appears to be taken away in one of the enumerated modes.

''But this doctrine of concurrent jurisdiction is only clearly applicable to those descriptions of causes of which the State courts have previous cognizance. It is not equally evident in relation to cases which may grow out of, and be peculiar to, the Constitution to be established; for not to allow the State courts a right of jurisdiction in such cases can hardly be considered as the abridgement of a pre-existing authority.''

And, in concluding the discussion of this question, the same distinguished author says, ''the inference seems to be conclusive that the State courts would have a con-

current jurisdiction in all cases arising under the laws of the Union, where it was not expressly prohibited," but that Congress, in the course of legislation upon subjects entrusted to it, might commit the decision of causes arising upon any particular regulation, solely to the Federal courts. In discussing this question in Houston v. Moore, 5 Wheat. 26, Mr. Justice Washington, concurred in the foregoing exposition by the Federalist in the following language:

"I can discover, I confess, nothing unreasonable in this doctrine; nor can I perceive any inconvenience which can grow out of it, so long as the power of Congress to withdraw the whole or any part of those cases from the jurisdiction of the State court is, as I think it must be, admitted."

This position has been consistently and steadily maintained by the Federal Government. In the Judiciary Act of 1789, the exclusive and concurrent jurisdiction conferred on the courts by that act were clearly distinguished and marked. It granted exclusive jurisdiction to the Federal circuit courts of all crimes cognizable under the authority of the United States, except where the laws of the United States should otherwise provide. Accordingly, the Acts of 1807 and 1816, concerning the forgery of the notes of the United States Bank, and the Act of 1806, relating to counterfeiters of the current coin of the United States, contained express provisions declaring that nothing therein should deprive the State courts of jurisdiction under the laws of the several States, over those offenses. Prosecutions under State laws for those and similar offenses have been repeatedly sustained. Fox v. Ohio, 5 How. 410; United States v. Marigold, 9 How. 560; Moore v. Illinois, 14 How. 13; Ex parte Siebold, 100 U. S. 371; Cross v. North Carolina, 132 U. S. 131. As is well stated by Kent, "without these provisos, the State courts could not have exercised concurrent jurisdiction over those offenses, consistently with the Judiciary Act of 1789. But these saving clauses restored the concurrent jurisdiction of the State courts, so far as, under the State's authority, it could be exercised by them. There are many other acts of Congress, which permit jurisdiction over the offenses therein described, to be exercised by State magistrates and courts. This was necessary, because the concurrent jurisdiction of the State courts over all offenses was taken away, and that

jurisdiction was vested exclusively in the national courts by the Judiciary Act, and it required another act to restore it. The State courts could exercise no jurisdiction whatever over crimes and offenses against the United States, unless where, in particular cases, the laws had otherwise provided; and whenever such provision was made, the claim of exclusive jurisdiction in the particular cases was withdrawn, and the concurrent jurisdiction of the State courts, eo instanti, restored, not by way of grant from the National Government, but by the removal of a disablity before imposed upon the State tribunals.'' (1 Comm. 398). Under section 1, of article 3, of the Federal Constitution, the judicial power of the United States is vested in the courts of the United States. By the Statutes of the United States those courts have jurisdiction exclusive of the courts of the several States, of ''all crimes and offenses cognizable under the authority of the United States.'' (U. S. Rev. Stats., Sec. 711, cl. 1.) And the circuit courts of the United States have exclusive cognizance of all such crimes and offenses, except where otherwise provided by law, the principal exception being where concurrent jurisdiction is given to the district courts of the United States. (U. S. Rev. Stats., Sec. 629, cl. 20). But, when Congress came to define and punish perjury, it did not insert in its statute a proviso saving the jurisdiction of the State courts, in perjury cases, as it had done in the statutes punishing forgery and counterfeiting, above referred to. (U. S. Rev. Stats., Sec. 5392). Consequently, it follows that the jurisdiction to punish perjury committed in a Federal tribunal is confined to the courts of the United States, although the crime of perjury be punishable under the laws of the State. Moreover, the question here presented was considered in Thomas v. Loney, 134 U. S. 372, and was settled adversely to the jurisdiction of the State court. In that case, Loney was arrested under a warrant issued by a justice of the peace of Richmond, Virginia, upon a complaint charging him with perjury in giving his deposition as a witness in the case of a contested election of a member of Congress. In releasing him upon a writ of habeas corpus from that imprisonment of the State, Mr. Justice Gray said:

''The power of punishing a witness for testifying falsely in a judicial proceeding belongs peculiarly to the Government in whose tribunals that proceeding is had.

It is essential to the impartial and the efficient administration of justice in the tribunals of the nation that witnesses should be able to testify freely before them, unrestrained by legislation of the State or by fear of punishment in the State courts. The administration of justice in the national tribunals would be greatly embarrassed and impeded if a witness testifying before a court of the United States, or upon a contested election of a member of Congress, were liable to prosecution and punishment in the courts of the State, upon a charge of perjury, preferred by a disappointed suitor or contestant, or instigated by local passion or prejudice.

"A witness who gives his testimony, pursuant to the constitution and laws of the United States, in a case pending in a court or other judicial tribunal of the United States, whether he testifies in the presence of that tribunal, or before any magistrate or officer (either of the nation or of the State) designated by act of Congress for the purpose, is accountable for the truth of his testimony to the United States only; and perjury committed in so testifying is an offense against the public justice of the United States, and within the exclusive jurisdiction of the courts of the United States, and can not, therefore, be punished in the courts of Virginia under the general provision of her statutes that 'if any person, to whom an oath is lawfully administered on any occasion, wilfully swear falsely on such occasion touching any material matter or thing,' he shall be guilty of perjury. Virginia Code of 1887, Sec. 3741."

In State v. Pike, 15 N. H. 83, Chief Justice Parker, in an able opinion, held that the courts of New Hampshire had no jurisdiction of the crime of perjury committed in an examination before a commissioner under the United States Bankruptcy Act; and in Ex parte Bridges, 2 Woods 428, Mr. Justice Bradley held that the State courts have no jurisdiction of perjury committed in testifying before a commissioner of the circuit court of the United States.

State v. Shelley, 11 Lea 594; Ross v. State, 55 Ga. 192; State v. Adams, 4 Blackf. 146; People v. Kelly, 38 Cal. 145; State v. Kirkpatrick, 32 Ark. 117; McIntosh v. Bullard (Ark.), 129 S. W. 85, and United States v. Severino, 25 Fed. 949, sustain the same principle. See, also, Haney v. Sharp, 1 Dana 442.

Wherefore the judgment is affirmed.