THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, *v.* JULES W. ARNSTEIN, Defendant.

Court of General Sessions of the Peace of the County of New York, November 15, 1926.

Crimes — criminally receiving stolen property — charge based on receipt of certificates of corporate stock of different corporations, property of different persons — defense of former jeopardy — defendant was convicted in District of Columbia of conspiracy to bring some of same certificates into District of Columbia in violation of Federal Penal Code, § 37 — Penal Law, § 33, and Code of Criminal Procedure, § 139, do not bar proceeding — former jeopardy not shown — present indictments could only be found in New York county — present crime not within jurisdiction of court of District of Columbia.

The defendant, who was indicted in New York county for criminally receiving certificates of corporate stock of different corporations, the property of different persons, was convicted in the District of Columbia on a charge of conspiracy to bring into the District of Columbia a part of the certificates of stock, which he is charged in the present indictments of criminally receiving, in violation of section 37 of the Federal Penal Code. The defendant's plea of former jeopardy to the present indictments, based on section 33 of the Penal Law and section 139 of the Code of Criminal Procedure, cannot be sustained, for the crime of receiving stolen property and the crime of conspiracy to take a part of the same property into the District of Columbia constitute two distinct offenses, one against the State government and one against the Federal government, and section 33 of the Penal Law does not bar the prosecution in this State, except where the prosecution in a foreign State or under a foreign government is for the same offense committed under such circumstances that the courts of this State had jurisdiction thereof and founded upon the act or omission in respect to which the defendant is upon trial.

Section 139 of the Code of Criminal Procedure applies only where the crime for which the defendant is indicted in this State is within the jurisdiction of another State, Territory or country as well as within the jurisdiction of this State.

The crime of criminally receiving stolen property charged in the present indictments is not within the jurisdiction of the United States courts, for that crime is a substantive crime and an indictment therefor can be laid only in the county where the property is criminally received, unless there is proof that a part of that crime was committed elsewhere, and in this case all of the acts constituting the crime are alleged to have been committed in the county of New York.

MOTION to dismiss indictment.

*Joseph Shalleck*, for the motion.

*Joab H. Banton, District Attorney*, and *Frank E. Carstarphen, Assistant District Attorney*, opposed.

ROSALSKY, J. The grand jury of New York county, on February 17, 1920, found an indictment (No. 129934) against the defendant

PEOPLE v. ARNSTEIN. **177**

Misc. 176] Court of General Sessions, New York County, November, 1926.

and one John McGilroy, charging them with the crime of criminally receiving stolen property in the first degree.

On March 30, 1920, that body found two additional indictments (Nos. 129927 and 129928) against the defendant, charging him with the crimes of grand larceny in the first degree and criminally receiving stolen property in the first degree and with the crime of criminally receiving stolen property in the first degree, respectively.

Indictment No. 129934 alleges that on November 5, 1919, the defendant and McGilroy, in the county of New York, criminally received two certificates representing 200 shares of stock of the Crucible Steel Company of America, the property of Clark, Childs & Company.

Indictment No. 129927 alleges, in the first count, that on October 1, 1919, the defendant, in the county of New York, feloniously stole three certificates representing 300 shares of stock of the St. Louis and San Francisco Railroad Company, the property of Filor, Bullard & Smythe and of Merrill Lynch & Company, and five certificates representing 500 shares of stock of the Atlantic Gulf and West Indies Steamship Company, the property of H. P. Goldschmidt & Company and of Clark, Childs & Company. In the second count it alleges that on the same day the defendant criminally received the property mentioned in the first count.

Indictment No. 129928 alleges that on October 13, 1919, the defendant, in the county of New York, criminally received three certificates representing 300 shares of stock of the St. Louis and San Francisco Railroad Company, the property of Filor, Bullard & Smythe and of Merrill Lynch & Company, and five certificates representing 500 shares of stock of the Atlantic Gulf and West Indies Steamship Company, the property of H. P. Goldschmidt & Company and of Clark, Childs & Company.

The defendant pleaded not guilty to the three indictments.

On October 4, 1920, an indictment was filed in the Supreme Court of the District of Columbia accusing the defendant and others of a violation of section 37 of the Federal Penal Code. It was therein alleged that on the 1st day of October, 1919, in the county of New York, the defendant and others entered into a conspiracy to commit an offense against the United States of America by feloniously bringing into the District of Columbia stolen certificates of stock. The overt acts alleged in this indictment are as follows:

That on October 1, 1919, in the city of New York, one of the members of the said conspiracy did unlawfully take out of the possession of H. P. Goldschmidt & Company two certificates repre-

12

senting 200 shares of stock of the Atlantic Gulf and West Indies Steamship Lines, the property of said H. P. Goldschmidt & Company; that on October 15, 1919, two members of said conspiracy brought into the District of Columbia the said certificates representing 200 shares of stock of the Atlantic Gulf and West Indies Steamship Lines and hypothecated the same with the Commercial National Bank of Washington as security for a loan of $20,000, which amount was paid to them; that on October 1, 1919, in the city of New York, a member of said conspiracy unlawfully took out of the possession of Filor, Bullard & Smythe one certificate representing 100 shares of stock of the St. Louis and San Francisco Railroad Company; that on October 14, 1919, two members of said conspiracy feloniously brought into the District of Columbia the said certificates representing 100 shares of stock of the St. Louis and San Francisco Railroad Company and hypothecated the same with the Riggs National Bank as security for a loan of $20,000, which amount was paid to them; that on October 17, 1919, in the city of New York, one of the members of said conspiracy unlawfully took out of the possession of J. H. Oliphant & Company two certificates representing 200 shares of stock of the Ohio Cities Gas Company, the property of said J. H. Oliphant & Company; that on October 27, 1919, two members of said conspiracy feloniously brought into the District of Columbia the said two certificates representing 200 shares of stock of the Ohio Cities Gas Company and hypothecated the same with the Riggs National Bank as security for a loan of $25,000, which amount was paid to them; that on October 27, 1919, in the city of New York, one of the members of said conspiracy unlawfully took out of the possession of Clark, Childs & Company two certificates representing 20 shares of stock of the Baldwin Locomotive Works Company, the property of said Clark, Childs & Company, and that on November 5, 1919, two members of said conspiracy feloniously brought into the District of Columbia the said two certificates representing 20 shares of stock of the Baldwin Locomotive Works Company and hypothecated the same with the Continental Trust Company as security for a loan of $20,000, which amount was paid to them.

On May 4, 1921, the defendant was found guilty of the crime of conspiracy in the Supreme Court of the District of Columbia and he was sentenced to serve a term of two years and to pay a fine of $10,000. On February 5, 1924, the Circuit Court of Appeals of the District of Columbia affirmed his conviction. The defendant thereafter applied for· a writ of error and it was denied by the Supreme Court of the United States.

The defendant now moves to dismiss the three indictments

PEOPLE *v.* ARNSTEIN. **179**

Misc. 176]  Court of General Sessions, New York County, November, 1926.

found by the grand jury of New York county upon the grounds that his conviction in the District of Columbia of the crime of conspiracy to bring stolen certificates of stock therein was founded upon the acts set forth in the three indictments and is a sufficient defense thereto (Penal Law, § 33); and that the act charged as a crime in each of said indictments was within the jurisdiction of the United States as well as within the jurisdiction of this State and his conviction in the Supreme Court of the District of Columbia of the acts set forth in said indictments is a bar to a prosecution therefor in this State.    (Code Crim. Proc. § 139.)

In order that a decision may be rendered upon the merits of the defendant's application, the district attorney states that he does not contemplate proceeding against the defendant upon the charge of grand larceny.

It has long been established in the jurisprudence of this country that where an act constitutes a violation of the law and offends both the Federal and State governments, in the absence of a statute to the contrary, both the Federal and State governments may prosecute and punish the offender.   This is so because in this country we have two sovereignties, each deriving its power from different sources, and each has the undoubted right to determine under what circumstances a person shall be guilty of offending its dignity without regard to the other.   To vest jurisdiction in both the Federal and State governments it must appear that the act constituting a crime is one over which both the Federal and State governments have jurisdiction.   (*United States* v. *Lanza*, 260 U. S. 377; 43 Sup. Ct. 141; 67 L. Ed. 314; *Moore* v. *Illinois*, 14 How. [U. S.] 13; 14 L. Ed. 306; *United States* v. *Cruikshank*, 92 U. S. 542, 550, 551; 23 L. Ed. 588, 590, 591; *Ex parte Siebold*, 100 U. S. 371, 389, 390, 391; 25 L. Ed. 717, 723, 724; *Cross* v. *North Carolina*, 132 U. S. 131, 139; 33 L. Ed. 287, 290; 10 Sup. Ct. 47; *Pettibone* v. *United States*, 148 U. S. 197, 209; 37 L. Ed. 419, 424; 13 Sup. Ct. 542; *Crossley* v. *California*, 168 U. S. 640, 641; 42 L. Ed. 610; 18 Sup. Ct. 242; *Southern R. Co.* v. *Railroad Commission*, 236 U. S. 439; 59 L. Ed. 661; 35 Sup. Ct. 304; *Gilbert* v. *Minnesota*, 254 U. S. 325, 330; 65 L. Ed. 287, 289; 41 Sup. Ct. 125; *McKelvey* v. *United States*, 260 U. S. 353; 43 Sup. Ct. 132; 67 L. Ed. 301; *Hebert* v. *Louisiana*, —— U. S. ——; 71 L. Ed. ——.)

Mr. Justice LAMAR, in *Southern R. Co.* v. *Railroad Commission* (*supra*), said: " In support of this position numerous cases are cited which, like *Cross* v. *North Carolina*, 132 U. S. 131, hold that the same act may constitute a criminal offense against two sovereignties, and that punishment by one does not prevent punishment by the other.   That doctrine is thoroughly established.   But, upon an

analysis of the principle on which it is founded, it will be found to relate only to cases where the act sought to be punished is one over which both sovereignties have jurisdiction. This concurrent jurisdiction may be either because the nature of the act is such that at the same time it produces effects respectively within the sphere of state and Federal regulation and thus violates the laws of both; or, where there is this double effect in a matter of which one can exercise control but an authoritative declaration that the paramount jurisdiction of one shall not exclude that of the other.''

Many States have enacted statutes similar to section 33 of the Penal Law and section 139 of the Code of Criminal Procedure, prohibiting the additional prosecution of a person who commits a criminal act cognizable by both the State and Federal governments. It is evident that the policy of these enactments was based upon the conception of the fundamental human right that no person shall be twice punished for the same crime.

Section 33 of the Penal Law provides as follows: '' Whenever it appears upon the trial of an indictment, that the offense was committed in another state or country, or under such circumstances that the courts of this state or government had jurisdiction thereof, and that the defendant has already been acquitted or convicted on the merits upon a criminal prosecution under the laws of such state, or country, founded upon the act or omission in respect to which he is upon trial, such former acquittal or conviction is a sufficient defense.'' This section was formerly section 679 of the Penal Code, which went into effect on the 1st day of December, 1882.

In 1864, the so-called Field Commission presented a draft of the Penal Code to the Legislature, dealing with the subject-matter contained in sections 33 and 679. Section 739 of this draft reads as follows: '' But whenever it appears upon the trial of an indictment that the accused has already been acquitted or convicted upon any criminal prosecution under the laws of another state, government or country, founded upon the act or omission in respect to which he is upon trial, this is a sufficient defense.''

The principal argument of the defendant is that section 33 (*supra*) prohibits any further prosecution of an accused in this State where his conviction in the foreign jurisdiction was based upon any criminal prosecution whatsoever, so long as the crime of which he was there convicted was founded upon the act or omission in respect to which he is upon trial in this State.

It will be noted that the language of section 33 of the Penal Law is more direct and specific than that of section 739 of the Field Code regarding the effect of a conviction or an acquittal of a defendant in another State or country. Section 33 contains the

PEOPLE *v.* ARNSTEIN. **181**

Misc. 176]   Court of General Sessions, New York County, November, 1926.

definite article " the " before the word " offense," which clearly indicates that the offense set forth in the indictment in New York county must be the particular offense committed by the defendant in another State; that he has been there convicted or acquitted of said offense on the merits, and that said offense was founded upon the act or omission in respect to which he is put upon trial in this county so as to constitute a sufficient defense.

The commissioners who prepared the draft of the Field Penal Code construed section 739 thereof, " to apply in cases where the foreign acquittal or conviction took place in respect to the particular act or omission charged against the accused upon the trial in this state, and is not restricted to cases where the accused was tried abroad under the same charge." (See note under § 739, Draft of Field Penal Code, 1864.)

If section 33 of the Penal Law contained the language of section 739 of the Field Code, then the point made by the defendant that his conviction of the crime of conspiracy in the District of Columbia, being founded upon the acts set forth in the indictments pending against him in New York county, would be well taken, because it is apparent that under section 739 of the Field Code it is immaterial what was the nature of the offense committed by a defendant in the foreign jurisdiction which resulted in his conviction, provided the crime of which he was there convicted was founded upon the act or omission in respect to which he is upon trial in this State.

When section 739 of the Field Code is compared with section 33 of the Penal Law which was finally enacted, it will be observed that the Legislature added: " that the offense was committed in another state or country, or under such circumstances that the courts of this state or government had jurisdiction thereof, and;" that it substituted " defendant " for " accused; " that it added " on the merits; " that it substituted " a " for " any," and " such former acquittal or conviction " for " this."

The learned counsel for the defendant overlooks the fact that the Legislature, in 1882, refused to adopt in its entirety the language contained in section 739 of the Field Code, and that when it enacted section 679 of the Penal Code it specifically added and substituted the language above set forth. There must have been a well-grounded reason for the Legislature to have finally enacted section 33 in the form in which it now appears in the Penal Law. It evidently felt that the words " any criminal prosecution " would afford violators of the law a wider field in the commission of crime, and that this State would be restricted in their prosecution and punishment where the foreign conviction against them was founded only upon the act

or omission in respect to which they would be placed upon trial in this jurisdiction.

It seems clear that for a defendant successfully to plead section 33 of the Penal Code, it must appear upon the trial of the indictment found against him in New York county that the offense charged therein was the particular offense of which he was convicted or acquitted, on the merits, in another State or country, and that such offense was founded upon the act charged in the indictment filed against him in New York county.

The record, however, shows that the defendant was not convicted in the District of Columbia of the particular offense for which he has been indicted in New York county, namely, criminally receiving stolen property, but that the offense of which he was convicted upon the merits in the District of Columbia was for a conspiracy to bring stolen certificates of stock into the District of Columbia, and that such offense was founded upon the acts charged in the indictments filed against him in New York county.

I am, therefore, of the opinion that, notwithstanding the fact that the offense of conspiracy of which the defendant was convicted in the District of Columbia was founded upon the acts set forth in the New York county indictments, it does not entitle him to plead his conviction there as a sufficient defense to these indictments.

There still remains to be considered the question whether the crime of criminally receiving stolen property, which is the charge set forth in each of the three indictments pending against the defendant in New York county, is within the jurisdiction of the United States as well as within the jurisdiction of this State.

Criminally receiving stolen property is a substantive crime and an indictment for such crime can be laid only in the county where the property is criminally received (*People.* v. *Zimmer,* 174 App. Div. 470; affd., 220 N. Y. 597; *People* v. *Spivak,* 237 id. 460), except if there be proof that a part of that crime was committed elsewhere. The record before me shows that all of the acts constituting the crime of criminally receiving stolen property alleged to have been committed by the defendant were fully completed in New York county. No part of these crimes was committed by the defendant or any of his confederates in the District of Columbia. So far as this jurisdiction is concerned, the acts of the defendant constitute a violation of the law against the State of New York. The acts committed by the defendant and his confederates in bringing the stolen certificates of stock into the District of Columbia constituted a separate and distinct crime which offended the Federal jurisdiction.

Although the conspiracy was entered into by the defendant and

his confederates in New York county, no crime was committed by the defendant which offended the Federal jurisdiction until an overt act, pursuant to such conspiracy, was committed by him or his confederates in the District of Columbia.

While the conspiracy indictment contains eight overt acts, it is necessary to prove only one to make the offense complete.    ( *United States* v. *Hirsch,* 100 U. S. 33; *Hyde* v. *Shine,* 199 id. 62, 76.)    Four of the overt acts set forth in the conspiracy indictment relate to certificates of stock which are not set forth in the indictments pending against the defendant in New York county.    These four overt acts relate to certificates of stock of the Ohio Cities Gas Company, the property of J. H. Oliphant & Company, and to certificates of stock of the Baldwin Locomotive Works Company, the property of Clark, Childs & Company.

The other four overt acts relate to certificates of stock of the Atlantic Gulf and West Indies Steamship Lines, the property of H. P. Goldschmidt & Company, and to certificates of stock of the St. Louis and San Francisco Railroad Company, the property of Filor, Bullard & Smythe.    These certificates of stock are set forth in two of the indictments pending against the defendant in New York county.    The conspiracy indictment is silent as to whether any overt act was committed in relation to the certificates of stock of the Crucible Steel Company of America, the property of Clark, Childs & Company, for which the defendant is also indicted in New York county upon a charge of criminally receiving stolen property.

Inasmuch as all of the overt acts were established on the trial of the defendant in the Supreme Court of the District of Columbia, and since only one overt act is essential to effect the object of the conspiracy, it is difficult to determine whether the jury relied upon proof of the overt acts in connection with the certificates of stock of the Ohio Cities Gas Company, of the Baldwin Locomotive Works Company, of the Atlantic Gulf and West Indies Steamship Lines or of the St. Louis and San Francisco Railroad Company.

Surely the stolen certificates of stock of the Crucible Steel Company of America could not have been considered by the jury as an overt act necessary to constitute the crime of conspiracy, because it was not alleged in the indictment filed against the defendant in the District of Columbia.

For the reasons stated, my conclusion is that the crime of criminally receiving stolen property, which is the charge set forth in each of the indictments pending against the defendant in New York county, is not within the jurisdiction of the District of Columbia, but is only within the jurisdiction of this State, and that

the defendant's conviction in the Supreme Court of the District of Columbia of the crime of conspiracy is no bar to a prosecution in New York county of the defendant upon said indictments.

The motion to dismiss the three indictments is, therefore, denied.