Mr. Justice DANIEL
delivered the opinion of the court.
This case comes before us on a writ of error to. the Supreme Court of the State of Ohio, by whose judgment was affirmed the judgment of the Court of Common Pleas for the county of Morgan in that State, convicting the plaintiff of passing, with fraudulent intent, a base and counterfeit coin in the similitude of a good and legal silver dollar,- and sentencing her for that offence to imprisonment and labor in the State penitentiáry for three years.
The prosecution against the plaintiff occurred in virtue of a statute of Ohio of March 7th,' J.835, and the particular clause on which the indictment was founded is in the following language, viz.:— “ That if any person shall counterfeit any of the coins of goid,' silver, or copper currently passing in this State, or shall alter or put off counterfeit coin or coins, knowing them to be such,” &c., a every person so offending shall be deemed guilty of a misdemeanour, and upon conviction thereof shall be imprisoned in the penitentiary and kept at hard labor not more than fifteen- nor less than three years.” As has been already stated, the plaintiff was convicted of the offence described in the statute, her sentence was affirmed by the Supreme Court of the State, and, with-the view of testing the validity of the sentence, a writ of error to the latter court has been •issued.
With the exceptions taken to the formality or technical accuracy of the pleadings -pending the prosecution, this court can have-nothing to do. The only question with which it can regularly deal in this case is the following, viz. : —Whether that portion of the statute of Ohio, under which the prosecution against the plaintiff has taken place, and, consequently, whether the conviction and sentence founded on *433 the statute, are consistent with or in contravention of the constitution of the United States, or of any law of the United Slates enacted in pursuance of the constitution ? For the plaintiff, it is insisted' that the, statute of Ohio is repugnant to' the fifth and sixth clauses of the eighth section of the first article of the constitution, which invest Congress with the power to coin money, regulate the value thereof ánd of foreign coin, and to provide for the punishment of counterfeiting the current coin of the United Statescontending that these clauses embrace not only what their.language directly imports, and all other offences which may be denominated offences against the coin itself, such as counterfeiting, scaling, or clipping it, or debasing it in any mode, but that they embrace other offences, such as frauds, cheats, or impositions between man and man by intentionally circulating or putting upon any person a base or simulated coin. On behalf of the State of Ohio, it is insisted that this is not the correct construction to be placed upon the clauses of the constitution in question, either by a natural and philological interpretation of their language, or by any real necessity for the attainment of their objects'} and that if any act of Congress should be construed as asserting this meáning in the constitution, and as claiming from it the power contended for, it would not be a law passed in pursuance of the constitution, nor one deriving its authority regularly from that instrument.
We think it manifest that the language of the constitution, by its proper signification, is limited to the facts, or to the faculty in Congress of coining and of stamping the standard of valute upon what the government creates or shall adopt, and of punishing the offence of producing a false representation of what may have been so created or adopted. The imposture of passing a false coin creates, produces, or alters nothing ; it leaves the legal coin as it was, — affects its intrinsic value in no wise whatsoever. The criminality of this act consists in the obtaining for a false representative of the true coin that for which the true coin alore is the equivalent. There exists ■an obvious difference, not only in the description of these offences, but essentially also in their characters. The former is an offence directly against the government, by which individuals may be affected ; the other' is a private wrong, by which the government may be remotely, if it will in any degree, be reached. A material distinction has been recognized between the offences of counterfeiting the coin and of passing base coin by á government which may be deemed sufficiently jealous of its authority ; sufficiently rigorous, tbo, in its penal code. Thus, in England, the counterfeiting of the coin is made high'treason, whether it be uttered or not} but those who barely utter false money are neither guilty of treason nor of misprision of treason. 1 Hawkins’s Pleas of the Crown, 20. Again (L East’s-Crown Law, 178)', if A. counterfeit the gold or silver coin, and by agreement before such counterfeiting B.-is to receive and vent the money, he is an aider and abettor to the *434 act itself of counterfeiting, and consequently a principal traitor within the law. But if he had merely vented the money for his own private benefit, knowing it to be false, in fraud of any person, he was only liable to be punished as for a cheat arid misdemeanour, &c. These citations from approved English treatises on criminal law are adduced to show, in addition to .the obvious meaning of the words of the constitution, what has been the adjudged and established import of the phrase counterfeiting the coin, and', to .what description of, acts that phrase is restricted.
It would follow from these views, that if within the power conferred by the clauses of the constitution above quoted can be drawn the power to punish a private cheat effected by means of a base dollar, that power certainly cannot be deduced from either the common sense or the adjudicated meaning of the language used in the constitution, or from any apparent or probable conflict which might-arise between, the federal and State authorities, operating each upon these distinct characters of offence. If any such conflict can be apprehended, it must be from some remote, and. obscure, and ■ scarcely ■ comprehensible possibility, which can never constitute an objection to a just and necessary State power. The punishment of a cheat or a misdemeanour practised within the State, and against those whom she is bound to protect, is peculiarly and appropriately within her functions and. duties, and it is difficult to imagine an interference with .those duties and functions which would-be regular or justifiable. It has been objected on behalf of the plaintiff in error, that if the States could inflict penalties for the offence of passing base coin, and the federal government should denounce a penalty against the same act, an individual under thése separate jurisdictions might be liable to be twice punished for the one and the same crime, and that this would be in violation of the fifth article of the amendments to the constitution, declaririg that no person shall be subject for the same offence to be twice' put in jeopardy of life or limb.. Conceding for the present that Congress should undertake, .and could rightfully undertake, to punish a cheat perpetrated between citizens of a State because an instrument in effecting that cheat was a counterfeited coin of the United States,, the force of the objection sought to be deduced from the position assumed is not perceived ; for the position is itself without real foundation. The prohibition alluded ¡to as contained in the amendments to the constitution, as well as others with which it is associated in those articles, were not designed as limits upon the State governments in reference to their own citizens. They are exclusively restrictions upon federal power, intended to prevent interference with the rights of the States, and of their citizens. Such has been the interpretation given to those amendments by tips court, in the case of Barron v. The Mayor and City Council of Baltimore, 7 Peters, 243; and such indeed is the only rational and in *435 telligible interpretation which those amendments can bear, since it is neither probable nor credible that the States should have anxiously insisted to ingraft upon the federal constitution restrictions upon their own authority, — restrictions which sonae of the States regarded as the sine qua non of its adoption by them. It is almost certain,- that, in the benignant spirit in which the institutions both of the State and. federal systems are administered, an offender who should have suffered the penalties denounced by the one would not be subjected a second time to punishment by the other for acts essentially the same, unless indeed this might occur in instances of peculiar enormity,.or where the, public safety demanded extraordinary rigor.-’ But were a contrary course of policy and action either probable or usual, this would by no means justify the conclusion, that offences falling within -the competency of different authorities to restrain or punish them would not properly- be subjected to the consequences which those authorities might ordain and affix to their perpetration.. The particular offence described in the statute of Ohio, and charged in the indictment against the plaintiff in error, is deemed by this court to be clearly within the rightful power and jurisdiction of the State. So far, then, neither the statute in question, nor the conviction and sentence founded upon it, can be held as violating either the constitution or any law of the United States made in pursuance thereof. The judgment of the Supreme Court of the State of Ohio, affirming that of the Court of Common Pleas, is therefore in all things affirmed.