Verdict for defendants.

---

## UNITED STATES *v.* YATES.

*(District Court, E. D. New York. May 2, 1881.)*

**1. INFAMOUS CRIME—FIFTH AMENDMENT.**
    The crime of passing counterfeit trade dollars is not an infamous crime within the meaning of the fifth amendment of the constitution.

**2. SAME—INFORMATION.**
    A prosecution for such offence, upon information filed by the district attorney, does not, therefore, violate the constitution of the United States.—[ED.

Information. Motion in Arrest of Judgment.

*A. W. Tenney*, for the United States.

*Noah Tebbetts*, for defendant.

BENEDICT, D. J. Andrew Yates was charged by an information with having passed counterfeit trade dollars with intent to defraud, in violation of the statute of the United States in such case made. Rev. St. § 5457, as amended by act of January 16, 1877, (19 St. at Large, 223.) Upon arraignment he pleaded not guilty. Having been tried and convicted upon such information and plea, he now moves in arrest of judgment upon the ground that a prosecution upon an information filed by the district attorney, instead of an indictment of a grand jury, for the crime charged against him, is in violation of the constitution of the United States. The language of the constitution relied on is found in the fifth amendment, and is as follows: "No person shall be held to answer for a capital or otherwise infamous crime, unless on a presentment or indictment of a grand jury."

The question for determination, therefore, is whether the crime of passing counterfeit trade dollars is an infamous crime within the meaning of the fifth amendment of the constitution. The act of passing counterfeit money, with intent to defraud, was one of common occurrence in England prior to and at the time of the adoption of our constitution, and the character of the act, as fixed by the statutes of England in force at the time of the adoption of the fifth amendment, will furnish a good test by which to determine whether the offence was intended to be covered by the words "infamous crime" in the fifth amendment. By the laws of England from an early period a clear distinction between the act of coining and the act of passing counterfeit coin had been maintained. The former was, by the statutes of Elizabeth, (1 Hale, P. C. 224,) placed in the highest class of crimes, and punished with death, upon the ground that the royal majesty of the crown was affected by such act in a great prerogative of government. 1 Russ. on Crimes, 54. The act of passing counterfeit coin was nothing more than a cheat. Prior to the statute, 15 Geo. II. c. 28, there does not appear to have been any statute of England whereby the mere act of passing counterfeit coin, with intent to defraud, was made a crime.

It was punishable as a cheat at common law, but not otherwise. 1 Russ. on Crimes, 75.

The statute (15 Geo. II, *c.* 28) made it a statutory offence to utter or tender in payment counterfeit coin in gold or silver, and this statute, after reciting that "whereas the uttering of false money, knowing it to be false, is a crime frequently committed all over the kingdom, and the offenders therein are not deterred by reason that it is only a misdemeanor and the punishment often but small," provides that the offender, for the first offence, shall suffer six months' imprisonment and give sureties for good behavior during six months; that upon conviction a second time for a like offence the offender shall suffer two years' imprisonment and give sureties for good behavior during two years; and that upon a third conviction for a like offence the offender shall be deemed a felon. The provisions of this statute, taken in connection with the prior condition of the law upon this subject in England, are sufficient to show that at the time of the adoption of the fifth amendment the act of passing counterfeit coin was not, by the laws of England, included among infamous crimes. Judging from the law of England as it was understood to be at the time of the adoption of the fifth amendment, the conclusion would therefore be that the act of passing counterfeit coin was not intended to be included among infamous crimes within the meaning of the fifth amendment. The same conclusion is reached by applying the principles of the common law to the act here charged against the defendant. The rule of the common law by which to determine whether an act was infamous or not is given in *U. S.* v. *Block*, 4 Saw. 214, where it is said that at common law a crime involving a charge of falsehood, must, to be infamous, not only involve a falsehood of such a nature and purpose as makes it probable that the party committing it is devoid of truth and insensible to the obligation of an oath, but the falsehood must be calculated to injuriously affect the public administration of justice. Tried by this test, the act of passing counterfeit coin with intent to defraud is, manifestly, not infamous.

The rule of the common law, as above stated, seems to be

recognized in the statutes of the United States, inasmuch as section 5392 contains a specific provision that a conviction for perjury shall render the offender incapable of giving testimony in any court of the United States; and, so far as I have discovered, a similar effect has not been given by statute to any other crime. But I do not see how the question under consideration must not be considered as disposed of by the decision of the supreme court of the United States in the case of *Fox* v. *The State of Ohio*, 5 How. 410, where the power of a state to punish the act of passing a counterfeit coin of the United States with intent to defraud was called in question and upheld upon the ground that it was a mere cheat. It will not be pretended, I think, that any act such as the act of passing counterfeit coin is described to be by the supreme court in the case of *Fox* v. *The State of Ohio*, was, by the common law, deemed to be an infamous crime. The effect of the decision of the supreme court in *Fox* v. *The State of Ohio* is in nowise modified by the subsequent decision of the same court in *U. S.* v. *Marigold*, 9 How. 264, where the power of the United States to punish the act of passing counterfeit coin of the United States was upheld upon the ground that the court traced "both the offence and the authority to punish it to the power given by the constitution to coin money, and to the correspondent and necessary power and obligation to protect and to preserve in its purity this constitutional currency for the benefit of the nation;" for in *U. S.* v. *Marigold* the court is careful to re-affirm, in express terms, all the doctrines declared in *Fox* v. *The State of Ohio*. So that according to the laws of the United States, as expounded by the supreme court of the United States, the act of passing counterfeit coin with intent to defraud is, in its nature, nothing more than a mere cheat. Authority in the United States to punish this form of cheating results from the obligation cast upon the United States by the grant of power to coin money, but the character of the act is not changed thereby. It is still a cheat and nothing more.

It is pushing the argument too far to say that the supreme court, in upholding the authority of the United States to pun-

ish the passing of counterfeit coin upon the ground that the effect of such an act was to interfere with the government in the discharge of its obligations under the constitution, has placed the act of passing counterfeit coin in the same category with coining, and that, because coining was infamous at common law, passing counterfeit coin must now be held infamous. This mode of reasoning would lead to the conclusion that all crimes punishable by the United States are infamous, and must be prosecuted upon the indictment of a grand jury; for, except in a single instance, (Const. art. 1, § 8,) all the power to create offences possessed by the United States is a resulting power derived from the obligations created by the constitution.

The act of passing an unstamped check is plainly enough an interference with the government in the discharge of its obligation to levy and collect taxes, and probably nothing else. But a prosecution of such an act by information has passed under the consideration of the supreme court without objection, (*United States* v. *Isham,* 17 Wall. 496,) and many offences of a character to touch the prerogatives of the government have been prosecuted by information, both in the circuit and district courts of the United States. *U. S.* v. *Maxwell,* and cases cited, 3 Dill. 275. Before dismissing the subject it is proper to add that it is not seen that the question under discussion is affected by the circumstance that the statute creating the offence prescribes imprisonment at hard labor, and does not declare the offence to be infamous or a felony. The omission to declare the crime a felony furnishes, no doubt, a reason for considering the crime to be a misdemeanor, but the fact that the offence is a misdemeanor is not conclusive of the question whether it be an infamous crime or not; nor can the crime be held infamous from the fact that it is punishable by hard labor.

By the statutes of many states any crime punishable by hard labor is a felony, but no such test is furnished by the statutes of the United States. Indeed, a provision declaring that "a felony, under any law of the United States, is a crime punishable with death, or by imprisonment at hard labor,"

and that "every other crime is a misdemeanor," submitted by the revisers of the statutes in their draft, was rejected. See 2 Draft Rev. St. 2561, title, "Crimes."

In early times the character of the crime was determined by the punishment inflicted, but in modern times the act itself, its nature, purpose, and effect are looked at for the purpose of determining whether it be infamous or not. *The People* v. *Whipple*, 9 Cow. 708; 2 Starkie on Ev. part 4, p. 715. And while under our constitution the legality of an information may be affected by the nature of the punishment to this extent, that by virtue of the fifth amendment an information is not legal in any case where the punishment is death,—and such was the punishment prescribed for the act of passing counterfeit money by the act of 1790, repealed by the act of March 3, 1825,—in all other cases the legality of a prosecution by information, not prohibited by positive statute, must, as I conceive, depend upon the judicial question whether the nature, purpose, and effect of the act made criminal is such as to bring it within the meaning of the term "infamous crime," as that term was understood at common law, and cannot be determined by reference to any declaration on the subject contained in the statute, or by the nature of the punishment which the statute prescribes. Any other rule would place it in the power of the legislature to nullify the provision in the constitution by declaring that no offence against the United States shall be an infamous crime.

But if the rule be otherwise, and it be competent for the legislature to designate what offences against the United States are infamous crimes, or to make a crime infamous by declaring it to be a felony, the result here would be the same, because the statute is silent on the subject; and, in the absence of some positive provision, the presumption is against an intention to make an offence an infamous crime. *U. S.* v. *Cross*, 1 McArthur, 149. For these reasons I am of the opinion that the prosecution of the accused for the crime of passing counterfeit trade dollars by an information instead of by an indictment is legal, and that judgment may properly be pronounced upon the verdict rendered.

In order to prevent the delay attendant upon a removal of the case to the circuit court by writ of error, under the statute of March 3, 1879, (20 St. at Large, 354,) Judge BLATCHFORD consented to listen to the argument made upon this motion, and I am authorized to say that he concurs in this opinion.

NOTE. See *United States* v. *Baugh*, 2 FED. REP. 784; and *United States* v. *Coppersmith*, 4 FED. REP. 198.