UNITED STATES v. FIELD.

*Circuit Court, D. Vermont.* May Term, 1883.)

CONSTITUTIONAL LAW—INFAMOUS CRIME—PROSECUTION BY INFORMATION.

Passing counterfeit money of the United States is not an infamous crime, within the meaning of the fifth amendment to the constitution, and may be prosecuted by information.

Information for Passing Counterfeit Money.

*Kittredge Haskins,* U. S. Atty., for prosecution.

*John Young* and *Heman S. Royce,* for respondent.

WHEELER, J. This is an information filed by the district attorney, by leave of court, against the respondent for passing counterfeit money of the United States. The respondent has demurred to the information solely upon the ground that the prosecution should be by indictment, and not by information, because, it is said, this is an infamous crime within the meaning of article 5 of the amendments to the constitution of the United States, which provides that no person shall be held to answer for a capital or otherwise infamous crime except on presentment or indictment of a grand jury, etc. This amendment was proposed in 1789, and finally adopted in 1792. At common law the counterfeiting of the king's money was treason, and a felony, and infamous, but the mere passing of the counterfeits was only a misdemeanor. 1 Hawk. P. C. §§ 55, 56; East, Cr. Law, c. 4, § 26; Bac. Abr. "Treason, I;" *Fox* v. *Ohio,* 5 How. 410. This offense would not be infamous unless made so by statute. There was no statute of the United States at the time of the adoption of that amendment, and is none now, characterizing it in any way. There have been statutes, in the mean time, making it a felony, but that feature has been repealed. The repeal took away the effect of the characterization, and left the crime as it was before,—a misdemeanor in grade. The punishment was made severe; but the extent of punishment does not alter the nature of the offense. *U. S.* v. *Maxwell,* 14 Amer. Law Reg. 433; *U. S.* v. *Coppersmith,* 4 FED. REP. 198.

This very question was decided by Judge BENEDICT, with the concurrence of Judge BLATCHFORD, sustaining the information, in *U. S.* v. *Yates,* 6 FED. REP. 861. That decision should be followed until it is overruled by the supreme court. It is supported by *U. S.* v. *Wynn,* 9 FED. REP. 886, and *U. S.* v. *Petit,* 11 FED. REP. 58. This court concurs in it fully.

Demurrer overruled; the respondent to answer over.

---

There are several recent authorities sustaining more or less directly the point made by Judge WHEELER in the above opinion. The first to be noticed is that of *U. S.* v. *Coppersmith,* decided by Judge HAMMOND in the circuit court of the United States for the western district of Tennessee, in 1880, (4 FED. REP. 198.) This case, which is cited by Judge WHEELER, arose under section 819 of the Revised Statutes, which provides that, on the trial of "treason or a capital offense, the defendant shall be entitled to 20, and the United States to 5, peremptory challenges," while on the trial of any other felony the defendant shall be entitled to 10, and the United States to 3, peremptory challenges; and in all other cases, civil or criminal, each party shall be entitled to three peremptory challenges. In construing this statute, Judge HAMMOND, after dilating with much learning and good sense on the confusion attending the common-law notion of felony, proceeds to say: "Be this as it may, the clause under consideration may operate, in other than capital cases, to give the defendant 10 challenges in the following class of cases: *First,* where the offense is declared by statute, expressly or impliedly, to be a felony; *second,* where congress does not define an offense, but simply punishes it by its common-law name, and at common law it is a felony; *third,* where congress adopts a state law as to an offense, and under such law it is a felony." He then proceeds to say that while making counterfeit coin was, by the ancient common law, treason, and subsequently a felony, uttering and passing it was only a misdemeanor. This statement, I apprehend, is too broad. Counterfeiting coin was only treason at common law when the coin counterfeited was that of the king; counterfeiting the king's coin being put on the same basis as counterfeiting the king's privy seal, both being regarded as attacks on royal prerogative. It was not until 24 & 25 Vict. c. 99, that counterfeiting current coin of all kinds was made a felony. But, however this may be, the position is unquestionable that, at common law, forgery is in itself but a misdemeanor, and that, consequently, the passing of forged documents or instruments is only a misdemeanor. Whether counterfeiting coin is a felony at common law depends, I apprehend, upon whether the coin counterfeited is coin uttered by the sovereign, or coin uttered by a foreign prince,—a distinction not taken in the cases before us. To counterfeit the coin of the sovereign is, according to the preponderance of authority, felony at common law, though it is otherwise with the counterfeiting of other coin. That under the Revised Statutes, §§ 5414, 5457, 5464, counterfeiting is not a felony, is, I think, satisfactorily shown by Judge HAMMOND in *U. S.* v. *Coppersmith.* And the inference drawn by him, that the common-law offenses

of counterfeiting and of passing counterfeit coin are absorbed in the statutory definitions, is also satisfactorily established.

The next case in order is that of *U. S.* v. *Yates,* decided in the district court for the eastern district of New York, on May 2, 1881, by Judge BENEDICT, with the concurrence of Judge BLATCHFORD, (6 FED. REP. 861,) where it was decided that the crime of passing counterfeit trade dollars is not an "infamous" crime under the constitution, and that hence such prosecutions can be instituted by information filed by the district attorney. It is here laid down, following *U. S.* v. *Block,* 4 Sawy. 214, that "at common law a crime involving a charge of falsehood, must, to be infamous, not only involve a falsehood of such a nature and purpose as makes it probable that the party committing it is devoid of truth and insensible to the obligation of an oath, but the falsehood must be calculated to injuriously affect the public administration of justice. Tried by this test, the act of passing counterfeit coins with intent to defraud is, manifestly, not infamous." This statement is open to criticism. The common-law test of infamy heretofore generally accepted is disqualification as a witness; in other words, an offense, a conviction of which disqualifies a person at common law as a witness, is infamous; an offense not working such disqualification at common law is not infamous. *U. S.* v. *Mann,* 1 Gall. C. C. 3; *U. S.* v. *Isham,* 17 Wall. 496; *U. S.* v. *Bosso,* 18 Wall. 125; *U. S.* v. *Ebert,* 1 Cent. Law J. 205. As a general rule, "infamy," in this sense, comprehends treason, felony, and *crimen falsi,* (Phil. & Am. Ev. 17; Co. Litt. 6b; 1 Starkie, Ev. 94; 1 Greenl. Ev. §§ 372, 373; Whart. Crim. Ev. § 363;) and it has been expressly held that a conviction of forgery works infamy, though forgery be only a misdemeanor. *Rex* v. *Davis,* 8 Mod. 54; *Poage* v. *State,* 3 Ohio St. 229. If this be the case with forgery, it is difficult to see why it should not be the case with the offense of passing counterfeit coin.

As bearing on the question at issue, Judge BENEDICT cites *U. S.* v. *Isham,* 17 Wall. 496, where a prosecution by information for passing an unstamped check was sustained by the supreme court of the United States, no objection being taken to the procedure. But even supposing the question had been solemnly argued before the court, and expressly decided, the two cases do not fall within the same category. Passing an unstamped check is a misdemeanor of low grade. It may undoubtedly be prompted by an intention to cheat the government of two cents, but it is ordinarily the result either of mistake, or at the worst of slovenliness and a want of care. It falls under the head, therefore, rather of negligent offenses than of frauds. Whereas, of an indictment for passing counterfeit money, fraudulent intent is an essential incident; and proof of merely negligent passing of such money—*i. e.,* a passing without intent to defraud—would not sustain a conviction.

That severity and duration or punishment are not, as stated by Judge BENEDICT in his able opinion, decisive tests, must be conceded. At the same time, they are incidents, as will presently be argued, of some weight, in determining what is the meaning of "infamy" in the particular provision before us.

The next case in order of time is *U. S.* v. *Wynn,* decided by Judge TREAT, in the district court for the eastern district of Missouri, January 30, 1882, (9 FED. REP. 886,) where it was held that stealing from the mail is not an

infamous crime, and hence may be prosecuted by information. "When congress has declared an offense," so it was argued, "it is what congress has designated it, and not what any other system of jurisprudence or foreign statutes may prescribe." "If the congressional statute prescribes infamy the offense is infamous." "If congress does, without express provisions as to infamy, make the offense a felony, the offense must be presented as infamous and by indictment." Hence it was held that as the statute does not make stealing from the mail a felony, the offense is not "infamous," although "punishable by imprisonment at hard labor for not less than one year and not more than five years."

The last case to be noticed is *U. S.* v. *Petit*, in the circuit court for the eastern district of Missouri, March 29, 1882, (11 FED. REP. 58,) in which it appears that on the question whether passing counterfeit coin is an infamous crime, McCRARY, C. J., said: "With regard to the question involved, it is of very much more importance than the case itself, and therefore I am not prepared to announce that I have reached a final and matured decision in opposition to that of the district judge. I am prepared to say that it is a case of so much importance that I think it ought to go to the supreme court, and for that reason I will certify the case with the district judge, and will hold that the motion to quash the information must be sustained."

As directly accepting *U. S.* v. *Yates*, above noticed, is to be regarded *U. S.* v. *Field*, given in the text. Judge WHEELER properly felt himself bound by the rulings of Judge BLATCHFORD and Judge BENEDICT, in *U. S.* v. *Yates*. It is to be observed, however, that he does not content himself with merely following *U. S.* v. *Yates*. He goes further, and states that in the decision in *U. S.* v. *Yates* he "concurs fully."

So far, therefore, as the authorities go, there is a decided preponderance for the position that a crime is not "infamous," under the constitution, unless it is either a felony, or is made expressly infamous by act of congress. Eminent, however, as are the judges by whom these rulings are made, I must dissent from their conclusion for the following reasons:

(1) "Infamy," at the time the clause was introduced into the constitution, was, in criminal law, a term of art. It meant that grade of crime, conviction of which involved exclusion from the witness-box. "Infamous crime" and "felony" are not convertible terms. Forgery, in the sense before us, is an infamous crime at common law, as several cases above cited show, and so is perjury; yet both forgery and perjury are, at common law, misdemeanors. If forgery is an infamous crime, it is hard to see why passing forged paper, which is virtually accessoryship after the fact to forgery, is not infamous. At all events, if there be a doubt in such a case, the doubt should be given to the accused. *In dubio mitius.* It is hard to see why a harsher process should be applied to the passer of forged paper than to the forger,—to the passer of false coin than to the manufacturer of such coin.

(2) It is true that we are not to make "infamous crimes," and "crimes punishable with hard labor in the penitentiary," convertible terms. When, however, we have, in a question of doubt, to determine what offenses are "infamous," it is proper to inquire what is the punishment the legislature imposes on such a crime. If "infamy" is to be defined in a technical sense, then

the proper meaning is that assigned to it by the courts in determining, as is said above, the qualifications of witnesses. If it is to be defined in a popular sense, then the popular estimation attached to the offense is to be considered. "Infamous," says Webster, is "scandalous, disgraceful, ignominious." That a crime is in this sense infamous is evidenced by the fact that it has assigned to it hard labor in a penitentiary for a period not less than one nor more than five years. The man who emerges from such an imprisonment cannot but be regarded, if any one can be so regarded, as tainted with "infamy," "disgrace," and "ignominy."

(3) It is not, in the face of an express intention exhibited to the contrary, to be assumed that congress meant to dispense with grand juries, in cases in which hard labor in the penitentiary for at least a year is imposed on conviction, and which were at least "infamous" in the sense of the term at the time of the adoption of the constitutional limitation. Grand juries are not only important checks on executive caprice and oppression, but they are of great value in the dignity and independence they lend to prosecutions, and the relief from personal responsibility they afford to the prosecuting attorney. It is not to be imagined that the framers of the constitutional limitation, or that congress, intended to substitute informations for indictments in any cases except those which are *quasi civil* in their character, such as revenue offenses. Even in England, where there is no constitutional limitation, and where informations used to be granted, on application to the court, for libels, we have late rulings to the effect that, as a matter of public policy, the granting of permission to file informations will in such cases be as a rule refused. Yet whas is proposed now is to establish in this country, under statutes whose ambigt uity all concede, the practice of putting defendants on trial for crimes of high order, to which disgraceful and severe punishment is assigned, on the mere information of the prosecuting attorney, without even a prior leave of court. As tending to the same result may be cited the following from Judge COOLEY:

"An infamous offense is one involving moral turpitude in the offender, or infamy in the punishment, or both. It is probable that in this amendment the punishment was in view as the badge of infamy, rather than any element in the offense itself, and that provision for the punishment of minor offenses otherwise than on indictment, even though they be degrading in their nature, would not be held unconstitutional, provided the punishment imposed was not greater than that usually permitted to be inflicted by magistrates, proceeding in a summary way. But the punishment of the penitentiary must always be deemed infamous; and so must any punishment that involves the loss of civil or political privileges." Cooley, Const. Law, 29.

FRANCIS WHARTON.