Marshall, C. J.
This cause comes to this court from the court of appeals of Fairfield county. In the court of common pleas of Fairfield county, at the October 1920 term, Joseph M. Burke was indicted, tried and convicted of the crime of forgery. A number of legal questions are presented in the error proceedings to this court, some of which arise upon exceptions to admission and rejection of evidence and others upon alleged error in the court’s charge and in the refusal to charge certain requests made by counsel for the defendant. None of these questions was seriously urged by counsel for Burke in this court and upon examination none is found to be of sufficient importance to justify a discussion of same or a declaration of principles pertaining thereto. There are, however, two questions which are of sufficient importance to demand the serious attention of this court.
In the indictment the forged instrument was described as ‘ a promissory, note. ’ ’ The Ohio forgery statute, Section 13083, General Code, enumerates among the instruments which may be the subject of forgery “promissory note for the payment of money or other property.” It was sought to test the sufficiency of this indictment by motion to quash and by demurrer, it being claimed that the indictment was fatally defective in not stating the precise instrument upon which an indictment for forgery can properly be predicated, it not being one of the instruments mentioned in the statute. It is urged that the identical words of the statute should be employed or the precise equivalent of those words. *222 Measured by the standard argued by counsel in this court, the conclusion must necessarily be reached that this indictment is sufficient. The statute enumerates promissory notes for the payment of {money and the term “promissory note” has such a. well-settled and uniformly-accepted meaning that it is difficult to see upon what theory it can be claimed that a promissory note is not the precise equivalent of a promissory note for the payment of money. In Bouvier’s Law Dictionary promissory note is defined as a written promise to pay a certain sum of money at a future time, unconditionally. We have examined a large number of cases in which this term is defined and almost without exception there is included as one of the necessary elements of the definition the payment of money. If upon the proof the instrument proved to be a promissory note not for the payment of money or other property a more serious question might arise. But upon consideration of the sufficiency of the indictment no serious difficulty is encountered. While it may be conceded that in most instances the employment of the identical words of the statute is the safest practice it is equally well settled that it is not always indispensable. It is only necessary that the offense itself should be set forth with clearness and certainty, and that the instrument should be described in such terms as to bring it substantially within the statutory provisions. Any other view would be out of harmony with the oft-repeated expressions of this court, beginning with Lougee v. State, 11 Ohio, 68. and reiterated in Poage v. State, 3 Ohio St., 229, and many later decisions.
Attention is called to the provisions of Section 13586, Greneral Code, as follows: “In all other eases. *223 when it is necessary to make an averment in an indictment as to an instrument, whether it consists wholly or in part of writing, print or figures, it shall he sufficient to describe such instrument by any name or designation by which it is usually known, or by the purport thereof.”
Clearly a promissory note is a designation which is universally understood as an instrument for the payment of money. We therefore find no error in overruling the motion to quash and the demurrer.
The language of the constitutional guarantee is very plain and simple, merely requiring that the accused is entitled “to demand the nature and cause of the accusation against him and to have a copy thereof.”
The courts in recent times áre to be commended for an effort to reach decisions based upon substantial principles rather than womout forms. The niceties, refinements and technicalities of criminal practice had their origin in the early English practice at a time when the larceny of any value above twelve pence was punishable by death. It is not strange that the English judges would construe indictments strictly and rigidly enforce rules of practice to perfectly absurd limits in an effort to reach humanitarian results. Although the reason for such narrow and technical constructions, has long since passed away, it is unfortunately true that too many courts, too closely wedded to precedent, fail to catch the modem spirit of adherence to the substantial and antipathy to the formal. Fortunately the number of such is comparatively small. The more recent tendency of legislatures is. toward lightening the prescribed penalties, that of the courts toward leniency of sentence, and that of the executive branch *224 toward liberality in exercise of pardoning power. There can therefore be no valid or sensible reason for applying absurd and senseless^ technicalities in the criminal practice and procedure. The sound, sensible rules which have found favor in the civil procedure should be given application to criminal procedure. The courts would fail to catch the true spirit of Sections 13581 to 13596, inclusive, and 13745, General Code, if a different policy should be pursued. One of the most important and laudable purposes of organized government is to prevent and punish crime and to protect life and property against the aggressions of persons of criminal tendencies. The government of our state would be working at cross-purposes if the judicial branch should by the application of technical rules of practice and procedure make it difficult for the executive branch to afford this much-needed protection.
We now come to the second question presented. A plea in abatement was filed against the indictment in the court of common pleas, before the trial, which alleged in substance that Burke was subpoenaed to appear before the grand jury in the usual way, that he appeared and testified as a witness, that he was by the grand jury examined as to all matters touching the alleged crime and gave material testimony relating to said matters, that there was not other sufficient testimony to justify the finding of an indictment against him, that he had no notice of the intention of the grand jury to investigate his conduct or to attempt to indict him for any offense and did not know that any act of his was under investigation, nor was he cautioned by the grand jury or other officials of his right to refuse to testify con *225 ceming any matter which might tend to incriminate him, that he was ignorant of snch right to so refuse and otherwise would not have testified, and that by reason thereof he was deprived of his constitutional right not to be compelled to be a witness against himself in any criminal case.
It will be observed that the plea in abatement did not allege that no other witnesses were examined, and it must also be conceded that the allegation in the plea that there was no other testimony offered sufficient to justify the finding of an indictment was purely a legal conclusion wholly unjustified on any theory, because no one could know what might be sufficient testimony in the minds of the grand jury to justify the indictment.
The plea in abatement having been heard and overruled, the case came on for trial, and in- making his defense Burke testified in his own behalf. It does not appear that the testimony given by Burke before the grand jury was offered in evidence by the state at the trial upon the indictment, neither is it claimed that the testimony which Burke offered in his own defense was different from that which was previously given before the grand jury.
Inasmuch as it is claimed that the rights of the accused guaranteed to him by the federal constitution have been violated, we will first take up a discussion of that proposition. This matter can be very easily disposed of by determining whether the federal ■ constitution has any application whatever to crimes or offenses other than those defined by federal laws.
It would be a work of supererogation-to discuss this matter upon principle, because the question has *226 been so clearly settled at an early date, and so uniformly adhered to, and so repeatedly asserted as to. leave no doubt in the minds of this court as to the proper conclusion to be reached. In the case of Barron v. Mayor and City Council of Baltimore, 7 Pet. (32 U. S.), 243, this principle was first under discussion and carefully analyzed by. the matchless logic of Chief Justice Marshall, and from the opinion in that case, at page 250, we quote:
“But it is universally understood, it is a part of the history of the day, that the great revolution which established the constitution of the United States, was not effected without immense opposition. Serious fears were extensively entertained that those powers which the patriot statesmen, who then watched over the interests of our country, deemed essential to union, and to the attainment of those invaluable objects for which union was sought, might be exercised in a manner dangerous to liberty. In almost every convention by which the constitution was adopted, amendments to guard against the abuse of power were recommended. These amendments demanded security against the apprehended encroachments of the general government — not against those of the local governments.
“In compliance with a sentiment thus generally expressed, to quiet fears thus extensively entertained, amendments were proposed by the required majority in congress, and adopted by the states. These amendments contain no expression indicating an intention to apply them to the state governments. This court cannot so apply them.”
It is further pointed out in that opinion that in the constitution itself certain powers were conferred *227 upon congress and certain other powers were forbidden to the states, and that haying forbidden the states to exercise certain powers by express provision no further limitation was intended upon the state governments unless expressed in terms. It was further pointed out that the same principle applies to the amendments to the constitution, and this was recognized in the later amendments to the federal constitution, because it will be seen that in the 14th Article of the Amendments, where it was intended that limitations should be placed upon state governments, it was clearly so expressed.
That case is noteworthy by reason of the fact that Roger B. Taney, later chief justice of the supreme court, was counsel for the defendant.
Following this early authority, the supreme court of the United States has in more than a score of cases reaffirmed the doctrine in a variety of cases, involving nearly all of the first ten amendments to the federal constitution, constituting the federal Bill of Rights, in some of which the language of the opinion in the Barron case was quoted. One rather recent ease is Ohio, ex rel. Lloyd, v. Dollison, 194 U. S., 445, which is specially cited because it was a case which was taken from the supreme court of Ohio in 1903. In that case Mr. Justice McKenna dismissed the entire matter as being already clearly settled, in the following brief statement at page 447: “It is well established that the first eight articles of the amendments to the Constitution of the United States have reference to powers exercised by the government of the United States, and not to those of the States.”
Other decisions of the supreme court of the United States are as follows: Lessee of Livingston v. Moore, *228 7 Pet., 469, 552; Fox v. State of Ohio, 5 How., 410, 434; Smith v. State of Maryland, 18 How., 71, 76; Withers v. Buckley, 20 How., 84, 91; Pervear v. Commonwealth, 5 Wall., 475, 479; Twitchell v. Commonwealth, 7 Wall, 321, 325; Justices v. Murray, 9 Wall, 274, 278; Edwards v. Elliott, 21 Wall., 532, 557; Walker v. Sauvinet, 92 U. S., 90; United States v. Cruikshank, 92 U. S., 542, 552; Pearson v. Yewdall, 95 U. S., 294, 296; Davidson v. New Orleans, 96 U. S., 97, 101; Kelly v. Pittsburgh, 104 U. S., 78; Presser v. Illinois, 116 U. S., 252, 265; Spies v. Illinois, 123 U. S., 131; Eilenbecker v. District Court of Plymouth County, 134 U. S., 31; Cook v. United States, 138 U. S., 157; Maxwell v. Dow, 176 U. S., 581; Brown v. New Jersey, 175 U. S., 172, 174, and Ughbanks v. Armstrong, Warden, 208 U. S., 481.
The same principle has been apparently recognized and followed by many of the states of the Union, because in many well-considered decisions of courts of last resort of the states we find a discussion of constitutional provisions of the states quite similar to the provisions of the first ten amendments of the federal constitution, in which those courts have been wholly silent concerning the application of the guaranties of the amendments to the federal constitution.
Let us then consider whether the rights of the accused, as guaranteed by Section 10, Article I of the Ohio Constitution, have been violated. We think that this question, like the other, can be easily disposed of. There have been two well-considered cases in this court which are decisive of the question. The earlier case is that of Lindsey v. State, 69 Ohio St., 215. In that case there were certain *229 elements which do not appear in the instant case, ■bnt in the most essential features sufficient authority is found in that case for sustaining the contentions of the state in the instant case. It is claimed that Burke was not advised as to his constitutional rights, or cautioned against testifying to any matters which might tend to incriminate him. This privilege has always been treated as a personal privilege to be claimed by the interested party, and in the absence of his claiming the privilege, or refusing to testify, he will be deemed to have voluntarily testified. We know of no authority or rule of law which makes it obligatory upon the grand jury or the prosecutor in charge of the grand jury to advise the witness as to his constitutional rights and privileges, or to caution him in any respect. In this matter, as in all other matters, the witness will be presumed to know the law and therefore will be presumed to have knowledge of his constitutional rights and guaranties, and if he does not claim them without being cautioned the presumption arises that his testimony was voluntarily given.
It is urged, however, that he did not know the nature of the investigation and had no knowledge or notice that the grand jury was investigating his conduct or that there was any attempt to indict him for any offense. It would seem, however, that he must have known by the very nature of the inquiry that his own acts and conduct were the subject of the investigation. Inasmuch as he later offered himself as a witness in his own defense at the hearing upon the indictment, and thereby subjected himself to cross-examination on the part of the prosecuting attorney, it will be conclusively presumed that his *230 examination was as full and complete in the one case as in the other and that his. testimony was the same in both instances, and it is therefore difficult to see in what way he was prejudiced by having testified before the grand jury. The state must have proved the allegations of the indictment and must have proved the commission of the crime to the satisfaction of the jury and the court, without the testimony of Burke, and we therefore feel privileged to indulge the presumption that there was sufficient evidence before the grand jury, without his testimony, to justify returning the indictment. It will be readily conceded that less evidence would be required before the grand jury to justify an indictment than would be required upon the trial upon the indictment to justify a conviction.
It is alleged in the plea in abatement that without the testimony of Burke there was not sufficient other testimony to justify the indictment. This is at best only a legal conclusion which should not be seriously considered. Inasmuch as the plea in abatement does not affirmatively state that no other witnesses were examined, this court will not presume that no other witnesses were examined, but, on the contrary, will presume that other testimony was offered and that the same was sufficient to justify the indictment. We see no occasion for impeaching the action of the grand jury in this respect.
Another reason for the conclusion that no prejudice has resulted to the accused to justify a reversal and a new trial is that inasmuch as the entire matter is now public information there would be no possible difficulty in having another indictment found, and Burke would then be in the same situation as he found *231 himself at the beginning of the trial upon the present indictment.
The other case above referred to is that of State v. Cox, 87 Ohio St., 313. In that case these matters are again discussed at length and the same conclusions reached.
As stated in the Lindsey case, we do not commend the practice of calling accused persons before the grand jury, neither do we feel justified in holding an indictment invalid which has been returned after the accused person has been called to testify.
In harmony with the modern tendency of the courts to disregard technicalities and to give consideration only to those matters which materially affect the substantial rights of persons accused of crime, the decision of this court will be that the plea in abatement was properly overruled. The judgment of the court of common pleas and of the court of appeals will therefore be affirmed.

Judgments affirmed.

Johnson, Hough, Wanamaker,, Robinson, Jones and Matthias, JJ., concur.