Justice GINSBURG, dissenting
Terance Martez Gamble pleaded guilty in Alabama state court to both possession of a firearm by a person convicted of "a crime of violence" and drug possession, and was sentenced to ten years' imprisonment, all but one year suspended. Apparently regarding Alabama's sentence as too lenient, federal prosecutors pursued a parallel charge, possession of a firearm by a convicted felon, in violation of federal law. Gamble again pleaded guilty and received nearly three more years in prison.
Had either the Federal Government or Alabama brought the successive prosecutions, the second would have violated Gamble's right not to be "twice put in jeopardy ... for the same offence." U.S. Const., Amdt. 5, cl. 2. Yet the Federal Government was able to multiply Gamble's time in prison because of the doctrine that, for double jeopardy purposes, identical criminal laws enacted by "separate sovereigns" are different "offence[s]."
I dissent from the Court's adherence to that misguided doctrine. Instead of "fritter[ing] away [Gamble's] libert[y] upon a metaphysical subtlety, two sovereignties," Grant, The Lanza Rule of Successive Prosecutions, 32 Colum. L. Rev. 1309, 1331 (1932), I would hold that the Double Jeopardy Clause bars "successive prosecutions [for the same offense] by parts of the whole USA." Puerto Ricov.Sánchez Valle , 579 U.S. ----, ----, 136 S.Ct. 1863, 1877, 195 L.Ed.2d 179 (2016) (GINSBURG, J., concurring).
*1990 I
A
Gamble urges that the Double Jeopardy Clause incorporates English common law. That law, he maintains, recognized a foreign acquittal or conviction as a bar to retrial in England for the same offense. See Brief for Petitioner 11-15. The Court, in turn, strives mightily to refute Gamble's account of the common law. See ante, at 1967 - 1975. This case, however, does not call for an inquiry into whether and when an 18th-century English court would have credited a foreign court's judgment in a criminal case. Gamble was convicted in both Alabama and the United States, jurisdictions that are not foreign to each other. English court decisions regarding the respect due to a foreign nation's judgment are therefore inapposite.
B
In United States v. Lanza , 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922), this Court held that "an act denounced as a crime by both national and state sovereignties is an offense against the peace and dignity of both and may be punished by each." Id., at 382, 43 S.Ct. 141. Decades later, a sharply divided Court reaffirmed this separate-sovereigns doctrine. Abbate v. United States , 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959) ; Bartkus v. Illinois , 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). I would not cling to those ill-advised decisions.
1
Justification for the separate-sovereigns doctrine centers on the word "offence": An "offence," the argument runs, is the violation of a sovereign's law, the United States and each State are separate sovereigns, ergo successive state and federal prosecutions do not place a defendant in "jeopardy ... for the same offence." Ante, at 1963, 1964 - 1965 (internal quotation marks omitted).
This "compact syllogism" is fatally flawed. See Braun, Praying to False Sovereigns: The Rule Permitting Successive Prosecutions in the Age of Cooperative Federalism, 20 Am. J. Crim. L. 1, 25 (1992). The United States and its constituent States, unlike foreign nations, are "kindred systems," "parts of ONE WHOLE." The Federalist No. 82, p. 493 (C. Rossiter ed. 1961) (A. Hamilton). They compose one people, bound by an overriding Federal Constitution. Within that "WHOLE," the Federal and State Governments should be disabled from accomplishing together "what neither government [could] do alone-prosecute an ordinary citizen twice for the same offence." Amar & Marcus, Double Jeopardy Law After Rodney King, 95 Colum. L. Rev. 1, 2 (1995).
The notion that the Federal Government and the States are separate sovereigns overlooks a basic tenet of our federal system. The doctrine treats governments as sovereign, with state power to prosecute carried over from years predating the Constitution. See Heath v. Alabama , 474 U.S. 82, 89, 106 S.Ct. 433, 88 L.Ed.2d 387 (1985) (citing Lanza , 260 U.S. at 382, 43 S.Ct. 141 ). In the system established by the Federal Constitution, however, "ultimate sovereignty" resides in the governed . Arizona State Legislaturev.Arizona Independent Redistricting Comm'n , 576 U.S. ----, ----, 135 S.Ct. 2652, 2675, 192 L.Ed.2d 704 (2015) ; Martin v. Hunter's Lessee , 1 Wheat. 304, 324-325, 4 L.Ed. 97 (1816) ; Braun, supra, at 26-30. Insofar as a crime offends the "peace and dignity" of a sovereign, Lanza , 260 U.S. at 382, 43 S.Ct. 141, that "sovereign" is the people, the "original fountain of all legitimate authority," The Federalist No. 22, at 152 (A. Hamilton); see Note, *1991 Double Prosecution by State and Federal Governments: Another Exercise in Federalism, 80 Harv. L. Rev. 1538, 1542 (1967). States may be separate, but their populations are part of the people composing the United States.
In our "compound republic," the division of authority between the United States and the States was meant to operate as "a double security [for] the rights of the people." The Federalist No. 51, at 323 (J. Madison); see Bond v. United States , 564 U.S. 211, 221, 131 S.Ct. 2355, 180 L.Ed.2d 269 (2011). The separate-sovereigns doctrine, however, scarcely shores up people's rights. Instead, it invokes federalism to withhold liberty. See Bartkus , 359 U.S. at 155-156, 79 S.Ct. 676 (Black, J., dissenting).[1]
It is the doctrine's premise that each government has-and must be allowed to vindicate-a distinct interest in enforcing its own criminal laws. That is a peculiar way to look at the Double Jeopardy Clause, which by its terms safeguards the "person" and restrains the government. See, e.g., id. , at 155, 79 S.Ct. 676 ; United States v. All Assets of G.P.S. Automotive Corp. , 66 F. 3d 483, 498 (CA2 1995) (Calabresi, J., concurring). The Double Jeopardy Clause embodies a principle, "deeply ingrained" in our system of justice,
"that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." Green v. United States , 355 U.S. 184, 187-188, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).
"Looked at from the standpoint of the individual who is being prosecuted," the liberty-denying potential of successive prosecutions, when Federal and State Governments prosecute in tandem, is the same as it is when either prosecutes twice. Bartkus , 359 U.S. at 155, 79 S.Ct. 676 (Black, J., dissenting).
2
I turn, next, to further justifications the Court has supplied for the separate-sovereigns doctrine. None should survive close inspection.
a
One rationale emphasizes that the Double Jeopardy Clause originally restrained only the Federal Government and did not bar successive state prosecutions. Id. , at 124, 79 S.Ct. 676 ; Lanza , 260 U.S. at 382, 43 S.Ct. 141 ; Fox v. Ohio , 5 How. 410, 434-435, 12 L.Ed. 213 (1847). Incorporation of the Clause as a restraint on action by the States, effected in Benton v. Maryland , 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), has rendered this rationale obsolete.
b
Another justification is precedent. In adopting and reaffirming the separate-sovereigns doctrine, the Court relied on dicta from 19th-century opinions. See Abbate , 359 U.S. at 190-193, 79 S.Ct. 666 ; Bartkus , 359 U.S. at 129-132, 79 S.Ct. 676 ; Lanza , 260 U.S. at 382-384, 43 S.Ct. 141. The persuasive force of those opinions is diminished by their dubious reasoning. See supra , at 1990 - 1991. While drawing upon dicta from prior opinions, the Court gave *1992 short shrift to contrary authority. See Braun, supra , at 20-23.
First, the Framers of the Bill of Rights voted down an amendment that would have permitted the Federal Government to reprosecute a defendant initially tried by a State. 1 Annals of Cong. 753 (1789); J. Sigler, Double Jeopardy: The Development of a Legal and Social Policy 30-31 (1969). But cf. ante, at 1965 - 1966. Nevermind that this amendment failed; the Court has attributed to the Clause the very meaning the First Congress refrained from adopting.[2]
Second, early American courts regarded with disfavor the prospect of successive prosecutions by the Federal and State Governments. In Houston v. Moore , 5 Wheat. 1, 5 L.Ed. 19 (1820), Justice Washington expressed concern that such prosecutions would be "very much like oppression, if not worse"; he noted that an acquittal or conviction by one sovereign "might be pleaded in bar of the prosecution before the other." Id., at 23, 31. The Court today follows Bartkus in distinguishing Justice Washington's opinion as addressing only the "strange" situation in which a State has prosecuted an offense "against the United States." Ante , at 1977; see Bartkus , 359 U.S. at 130, 79 S.Ct. 676. The distinction is thin, given the encompassing language in Justice Washington's opinion. Justice Story's dissent, moreover, declared successive prosecutions for the same offense contrary to "the principles of the common law, and the genius of our free government." Houston , 5 Wheat. at 72.
Most of the early state decisions cited by the parties regarded successive federal-state prosecutions as unacceptable. See Bartkus , 359 U.S. at 158-159, 79 S.Ct. 676 (Black, J., dissenting). Only one court roundly endorsed a separate-sovereigns theory. Hendrick v. Commonwealth , 32 Va. 707, 713 (1834). The Court reads the state-court opinions as "distin[guishing] between believing successive prosecutions by separate sovereigns unjust and holding them unlawful." Ante, at 1976. I would not read the Double Jeopardy Clause to tolerate "unjust" prosecutions and believe early American courts would have questioned the Court's distinction. See State v. Brown , 2 N. C. 100, 101 (1794) (allowing successive prosecutions would be "against natural justice, and therefore I cannot believe it to be law").
c
Finally, the Court has reasoned that the separate-sovereigns doctrine is necessary to prevent either the Federal Government or a State from encroaching on the other's law enforcement prerogatives. Without this doctrine, the Court has observed, the Federal Government, by prosecuting first, could bar a State from pursuing more serious charges for the same offense, Bartkus , 359 U.S. at 137, 79 S.Ct. 676 ; and conversely, a State, by prosecuting first, could effectively nullify federal law, Abbate , 359 U.S. at 195, 79 S.Ct. 666. This concern envisions federal and state prosecutors working at cross purposes, but cooperation between authorities is the norm. See Bartkus , 359 U.S. at 123, 79 S.Ct. 676. And when federal-state tension exists, successive prosecutions for the federal and *1993 state offenses may escape double-jeopardy blockage under the test prescribed in Blockburger v. United States , 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). Offenses are distinct, Blockburger held, if "each ... requires proof of a fact which the other does not." Id., at 304, 52 S.Ct. 180 ; see Amar, 95 Colum. L. Rev., at 45-46 (violation of federal civil rights law and state assault law are different offenses).
II
The separate-sovereigns doctrine, I acknowledge, has been embraced repeatedly by the Court. But "[s]tare decisis is not an inexorable command." Payne v. Tennessee , 501 U.S. 808, 828, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). Our adherence to precedent is weakest in cases "concerning procedural rules that implicate fundamental constitutional protections." Alleyne v. United States , 570 U.S. 99, 116, n. 5, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). Gamble's case fits that bill. I would lay the "separate-sovereigns" rationale to rest for the aforesaid reasons and those stated below.
A
First, Benton v. Maryland , 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, which rendered the double jeopardy safeguard applicable to the States, left the separate-sovereigns doctrine the sort of "legal last-man-standing for which we sometimes depart from stare decisis ." Kimble v. Marvel Entertainment, LLC , 576 U.S. ----, ----, 135 S.Ct. 2401, 2411, 192 L.Ed.2d 463 (2015). In adopting and cleaving to the doctrine, the Court stressed that originally, the Clause restrained only federal, not state, action. E.g., Bartkus , 359 U.S. at 127, 79 S.Ct. 676 ; Lanza , 260 U.S. at 382, 43 S.Ct. 141 ; cf. Abbate , 359 U.S. at 190, 79 S.Ct. 666.
Before incorporation, the separate-sovereigns doctrine had a certain logic: Without a carve-out for successive prosecutions by separate sovereigns, the Double Jeopardy Clause would have barred the Federal Government from prosecuting a defendant previously tried by a State, but would not have prevented a State from prosecuting a defendant previously tried by the Federal Government. Incorporation changed this. Operative against the States since 1969, when the Court decided Benton v. Maryland , 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707, the double jeopardy proscription now applies to the Federal Government and the States alike. The remaining office of the separate-sovereigns doctrine, then, is to enable federal and state prosecutors, proceeding one after the other, to expose defendants to double jeopardy.
The separate-sovereigns doctrine's persistence contrasts with the fate of analogous dual-sovereignty doctrines following application of the rights at issue to the States. Prior to incorporation of the Fourth Amendment as a restraint on state action, federal prosecutors were free to use evidence obtained illegally by state or local officers, then served up to federal officers on a "silver platter." See Elkins v. United States , 364 U.S. 206, 208-214, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960) ; Weeks v. United States , 232 U.S. 383, 398, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Once the Fourth Amendment applied to the States, abandonment of this "silver platter doctrine" was impelled by "principles of logic" and the reality that, from the perspective of the victim of an unreasonable search and seizure, it mattered not at all "whether his constitutional right ha[d] been invaded by a federal agent or by a state officer." Elkins , 364 U.S. at 208, 215, 80 S.Ct. 1437. As observed by Justice Harlan, Elkin s' abandonment of a separate-sovereigns exception to the exclusionary rule was at *1994 odds with retention of the separate-sovereigns doctrine for double jeopardy purposes in Abbate and Bartkus . See 364 U.S. at 252, 80 S.Ct. 1437.
Similarly, before incorporation of the Fifth Amendment privilege against self-incrimination, the Court held that the privilege did not prevent state authorities from compelling a defendant to provide testimony that could incriminate him or her in another jurisdiction. Knapp v. Schweitzer , 357 U.S. 371, 375-381, 78 S.Ct. 1302, 2 L.Ed.2d 1393 (1958). After application of the self-incrimination privilege to the States, the Court concluded that its prior position was incompatible with the "policies and purposes" of the privilege. Murphy v. Waterfront Comm'n of N. Y. Harbor , 378 U.S. 52, 55, 77, 84 S.Ct. 1594, 12 L.Ed.2d 678 (1964). No longer, the Court held, could a witness " be whipsawed into incriminating himself under both state and federal law even though the constitutional privilege against self-incrimination is applicable to each ." Id. , at 55, 84 S.Ct. 1594 (internal quotation marks omitted; emphasis added).
The Court regards incorporation as immaterial because application of the Double Jeopardy Clause to the States did not affect comprehension of the word "offence" to mean the violation of one sovereign's law. Ante, at 1978. But the Court attributed a separate-sovereigns meaning to "offence" at least in part because the Double Jeopardy Clause did not apply to the States. See supra , at 1991. Incorporation of the Clause should prompt the Court to consider the protection against double jeopardy from the defendant's perspective and to ask why each of two governments within the United States should be permitted to try a defendant once for the same offense when neither could try him or her twice.
B
The expansion of federal criminal law has exacerbated the problems created by the separate-sovereigns doctrine. Ill effects of the doctrine might once have been tempered by the limited overlap between federal and state criminal law. All Assets of G.P.S. Automotive , 66 F. 3d at 498 (Calabresi, J., concurring). In the last half century, however, federal criminal law has been extended pervasively into areas once left to the States. Guerra, The Myth of Dual Sovereignty: Multijurisdictional Drug Law Enforcement and Double Jeopardy, 73 N. C. L. Rev. 1159, 1165-1192 (1995) ; Brief for Sen. Orrin Hatch as Amicus Curiae 8-14. This new "age of 'cooperative federalism,' [in which] the Federal and State Governments are waging a united front against many types of criminal activity," Murphy , 378 U.S. at 55-56, 84 S.Ct. 1594, provides new opportunities for federal and state prosecutors to "join together to take a second bite at the apple," All Assets of G.P.S. Automotive , 66 F. 3d at 498 (Calabresi, J., concurring).[3] This situation might be less troublesome if successive prosecutions occurred only in "instances of peculiar enormity, or where the public safety demanded extraordinary rigor." Fox , 5 How. at 435. The run-of-the-mill felon-in-possession charges Gamble encountered indicate that, in practice, successive prosecutions are not limited to exceptional circumstances.
*1995 C
Against all this, there is little to be said for keeping the separate-sovereigns doctrine. Gamble's case "do[es] not implicate the reliance interests of private parties." Alleyne , 570 U.S. at 119, 133 S.Ct. 2151 (SOTOMAYOR, J., concurring). The closest thing to a reliance interest would be the interest Federal and State Governments have in avoiding avulsive changes that could complicate ongoing prosecutions. As the Court correctly explains, however, overruling the separate-sovereigns doctrine would not affect large numbers of cases. See ante, at 1978 - 1979. In prosecutions based on the same conduct, federal and state prosecutors will often charge offenses having different elements, charges that, under Blockburger , will not trigger double jeopardy protection. See Poulin, Double Jeopardy Protection From Successive Prosecution: A Proposed Approach, 92 Geo. L. J. 1183, 1244-1245 (2004) ; Brief for Criminal Defense Experts as Amici Curiae 5-11.[4]
Notably, the Federal Government has endeavored to reduce the incidence of "same offense" prosecutions. Under the Petite policy adopted by the Department of Justice,[5] the Department will pursue a federal prosecution "based on substantially the same act(s) or transaction(s)" previously prosecuted in state court only if the first prosecution left a "substantial federal interest ... demonstrably unvindicated" and a Department senior official authorizes the prosecution. Dept. of Justice, Justice Manual § 9-2.031(A) (rev. July 2009).
At oral argument, the Government estimated that it authorizes only "about a hundred" Petite prosecutions per year. Tr. of Oral Arg. 54. But see id., at 65-66 (referring to the "few hundred successive prosecutions that [the Government] bring[s] each year"). Some of these prosecutions will not implicate double jeopardy, as the Petite policy uses a same-conduct test that is broader than the Blockburger same-elements test. And more than half the States forbid successive prosecutions for all or some offenses previously resolved on the merits by a federal or state court. Brief for Criminal Defense Experts as Amici Curiae 4-5, and n. 2 (collecting statutes); Brief for State of Texas et al. as Amici Curiae 28-30, and nn. 6-15 (same). In short, it is safe to predict that eliminating the separate-sovereigns doctrine would spark no large disruption in practice.
* * *
The separate-sovereigns doctrine, especially since Bartkus and Abbate , has been subject to relentless criticism by members of the bench, bar, and academy. Nevertheless, the Court reaffirms the doctrine, thereby diminishing the individual rights *1996 shielded by the Double Jeopardy Clause. Different parts of the "WHOLE" United States should not be positioned to prosecute a defendant a second time for the same offense. I would reverse Gamble's federal conviction.

Bartkus v. Illinois , 359 U.S. 121, 151, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959) (Black, J., dissenting).

R. Bonner, Lawyers and Litigants in Ancient Athens 195 (1927).

J. Sigler, Double Jeopardy: The Development of a Legal and Social Policy 2-3 (1969); Digest of Justinian: Digest 48.2.7.2, translated in 11 S. Scott, The Civil Law 17 (1932).

See Bartkus , 359 U.S. at 152, n. 4, 79 S.Ct. 676 (Black, J., dissenting); Z. Brooke, The English Church and the Papacy 204-205, n. 1 (1931).

1 F. Pollock & F. Maitland, The History of English Law 448 (2d ed. 1898).